Filed 2/19/03 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2003 ND 14

Cindy Rittenour and

Donald Rittenour, Plaintiffs and Appellees

v.

Orville Gibson, Defendant and Appellant

No. 20020053

Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable Gary A. Holum, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Sandstrom, Justice.

Lee J. Balerud, P.O. Box 38, Minot, N.D. 58702-0038, for plaintiffs and appellees.

Lawrence R. Klemin of Bucklin, Klemin & McBride, Wells Fargo Bank Building, 400 East Broadway Avenue, P.O. Box 955, Bismarck, N.D. 58502-0955, for defendant and appellant.

Rittenour v. Gibson

No. 20020053

Sandstrom, Justice.

[¶1] Orville Gibson appeals from the Northwest Judicial District Court judgment denying his motion for a new trial.  Concluding the district court erred in instructing the jury, we reverse the judgment and remand for a new trial.

 

I

[¶2] In 1997 Gibson purchased a mobile home in the Palmer Trailer Court, located between the city of Minot and Minot Air Force Base, and has used it as a rental unit since the date of purchase.  Cheryl Lynn Jackson and her sister agreed to rent the unit starting February 1, 1999.  Neither Jackson nor her sister were joined in this action.

[¶3] Cindy and Donald Rittenour were friends of the Jacksons.  On May 8, 1999, as Cindy Rittenour was leaving Jackson’s home after a visit, her right leg broke through the floorboard in the entry shed.  Her left leg twisted beneath her.  Rittenour was taken to the hospital and was treated for her injuries.  At the time of the accident, Rittenour weighed over 350 pounds.

[¶4] Dr. Tyson Williams, a podiatrist in Minot, further examined Rittenour on May 25 and July 6 of 1999.  He also examined her on October 10 and November 9 of 2000, at which times x-rays and bone scans were taken.

[¶5] The Rittenours served the summons and complaint on Gibson in September 1999.  On November 1, 1999, Gibson served his first set of interrogatories, which included six interrogatories requesting information regarding experts or potential expert witnesses.  The Rittenours answered the interrogatories requesting information on experts investigating, examining, reporting, or being retained for the purpose of trial preparation by responding, “See Medical Records.”  To the interrogatory asking for the identity of the expert that would testify at trial, the Rittenours responded, “Unknown at this time.”

[¶6] On January 21, 2000, the Rittenours supplemented their answers to Gibson’s interrogatories and provided a list of medical providers who had treated Cindy Rittenour for her injuries incurred in the accident.  They did not, however, supplement the answer on which experts would testify at trial.  On July 13, 2000, at the pre-trial conference, the Rittenours identified fourteen potential witnesses.  Dr. Williams was not listed among the fourteen.  The district court set October 1, 2000, as a discovery cutoff date.  The Rittenours supplemented their answers again on September 28, 2000.  They listed one definite witness, who at trial ended up not testifying, and three potential witnesses, one of whom was Dr. Williams.  The Rittenours stated Dr. Williams was expected to testify as to the impairment, disability, permanency, and effect of Rittenour’s injuries on her daily living activities, as well as describe the injuries she suffered as a result of the accident.

[¶7] On October 2, 2000, Gibson moved in limine to exclude the entire testimony of Dr. Williams because the Rittenours had not seasonably supplemented their answers to interrogatories.  The motion was denied.  Before trial, Gibson obtained through medical release forms the medical records of Rittenour’s May 25 and July 6, 1999, visits to Dr. Williams.  On November 13, a seven-day jury trial began.  It was not until Rittenour’s testimony at trial that Gibson became aware of Rittenour’s October 10 and November 9, 2000, visits to Dr. Williams.  At that time, Gibson orally again moved in limine to exclude Dr. Williams’ entire testimony because of the absence of medical records of Rittenour’s last two visits to Dr. Williams.  The district court denied the motion but granted a one-day continuance for Gibson to review the medical records with his expert.  Dr. Williams testified to Rittenour’s future economic and noneconomic damages.  Gibson objected, arguing his testimony was speculative and hearsay.  The objection was overruled.  At the conclusion of the plaintiff’s case, and at the close of the case, Gibson moved for judgment as a matter of law.  Both motions were denied.  At trial Jackson testified Gibson told her of the defective floorboard and stated he would fix it when time permitted.  Gibson testified he did not know about the defective floorboard before or after the Jacksons had moved into the trailer.

[¶8] Gibson asked for a jury instruction on the tenant’s duty to warn, and took exception to the final instructions for not having included such an instruction.

[¶9] The jury awarded the Rittenours damages of $408,068.05, which included:

a. Past economic damages of $8,068.05;

b. Future economic damages of $300,000.00;

c. Past noneconomic damages of $50,000.00; and

d. Future noneconomic damages of $50,000.00.

The jury found Gibson 35% responsible for Rittenour’s injuries, Rittenour 25%, Cheryl Jackson 30%, and others 10%.  On December 22, 2000, judgment was entered in favor of the Rittenours and against Gibson in the amount of $144,883.81.

[¶10] Gibson moved for a new trial, asserting the district court erred in denying his request for a jury instruction on tenant liability, in denying his motion in limine to exclude the testimony of Dr. Williams, in denying the admittance of photographs, in denying his character witness an opportunity to testify, and in allowing the jury award.  The motion was denied.  Gibson appeals.

[¶11] The district court had jurisdiction under N.D.C.C. § 27-05-06 and N.D. Const. art. VI, § 8.  This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28-27-01.

 

II

[¶12] Gibson appeals the district court’s denial of his motion for a new trial.  In a motion for a new trial, the district court may, “‘within limits, weigh the evidence and judge the credibility of witnesses.’”  
Perry v. Reinke
, 1997 ND 213, ¶ 21, 570 N.W.2d 224 (quoting 
Okken v. Okken
, 325 N.W.2d 264, 269 (N.D. 1982)).  “When a motion for a new trial is made and the reason given in support of the motion is there was insufficient evidence to justify the verdict, the moving party is asking the trial court to decide whether or not the verdict is against the weight of the evidence.”  
Id.
  “A verdict is against the weight of the evidence when it is not supported by substantial evidence.”  
Id.
 at ¶ 22 (citing 
Olmstead v. First Interstate Bank
, 449 N.W.2d 804, 807 (N.D. 1989)).

[¶13] When reviewing a motion for a new trial, we do not apply the same standard as the district court and will not reweigh the evidence on appeal.  
Id.
 at ¶ 21.  We review only whether the district court abused its discretion.  
Id.
  “An abuse of discretion occurs when the district court is unreasonable, arbitrary, or unconscionable in rendering its decision.”  
Id.

 

A

[¶14] Gibson argues the district court erred in giving jury instructions that did not accurately reflect North Dakota’s current law on a tenant’s duty to a social guest to warn of dangerous conditions on the premises.

[¶15] “‘Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury.’”  
State v. Olander
, 1998 ND 50, ¶ 18, 575 N.W.2d 658 (quoting 
State v. Smaage
, 547 N.W.2d 916, 921 (N.D. 1996)).  When considering the correctness of jury instructions, we will view them as a whole.  
Id.
  The instructions will be allowed if, as a whole, they fairly advise the jury of the law on the essential issues in the case.  
Id.
  In evaluating whether the district court abused its discretion in instructing the jury, we will first determine whether the district court committed error in its instruction, and then, if so, whether that error was harmless.  
State v. Huber
, 555 N.W.2d 791, 793 (N.D. 1996); 
Interest of B.G.
, 477 N.W.2d 819, 822 (N.D. 1991).  Rule 61, N.D.R.Civ.P., states our harmless-error standard in civil cases:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.  The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

[¶16] Gibson argues that the district court erred by allowing a jury instruction on the duty of a landlord to inform a social guest about dangerous conditions on the premises without also allowing an instruction about the duty of a tenant to inform a guest if the tenant knows of a dangerous condition on the premises.  Altogether, the parties requested six pattern jury instructions pertaining to landlord and tenant responsibilities.  There were two pattern instructions on the obligations to maintain the premises—one on a landlord’s obligations and one on a tenant’s obligations; two pattern instructions on the duty to maintain the premises—one on a landlord’s duty and one on a tenant’s duty; and two pattern instructions on the duty to warn of unsafe conditions of premises—one on an owner’s duty and one on a possessor-of-the-land’s duty.  All of the instructions were submitted by the court to the jury in the final instructions except North Dakota Pattern Jury Instruction 17.10, regarding the duty of the possessor of land to warn of unsafe conditions of premises, which states:

A possessor of land owes a duty to a lawful entrant upon the premises to use reasonable care to [inspect and repair the premises] [or] [warn the entrant] in order to protect the entrant from an unreasonable risk of harm caused by the condition of the premises while the entrant is on the premises.

In determining reasonable care of the landowner, the following factors may be considered:

1) The purpose for which the entrant entered the premises;

2) The circumstances under which the entrant entered the premises;

3) The use to which the premises is put or expected to be put;

4) The foreseeability or possibility of harm;

5) The reasonableness of the inspection, repair, or warning; and

6) The opportunity and ease of repair or correction or the giving of the warning.

[¶17] Gibson specifically and in writing requested instruction 17.10.  Under N.D.R.Civ.P. 51(b), “North Dakota pattern jury instructions may be requested by reference to instruction number only.”  That was done here.  In chambers, however, he pointed out that the pattern instruction as written contained an error as it relates to the duty of a tenant who is the possessor of the land.  He asked that the pattern instruction be corrected to replace the reference to “landowner” with “possessor of land” to accurately reflect North Dakota law on a tenant’s duty to warn.  Gibson is correct that the pattern jury instructions contained an error that made a material difference in how the jury might have understood the law.  
Francis v. Pic
, 226 N.W.2d 654, 655-57 (N.D. 1975).  The failure to include the reference to “possessor” throughout the instruction could have led the jury to believe that the duty to warn belonged only to the landlord.  The trial court, however, did not correct the pattern instruction, leaving Gibson the option of having either a prejudicially erroneous instruction or no instruction.

[¶18] After the defendant could not get it corrected, he was left without a correct instruction as to the duty of a tenant who is the possessor of the land.  With no instruction on the duty of either the landlord or the tenant to warn, the instructions, although incomplete, arguably would not have been misleading.  The problem is that the trial court proceeded to North Dakota Pattern Jury Instruction 17.05, relating to the duty of the landlord to warn.

UNSAFE CONDITIONS OF PREMISES

If, at the time of leasing premises, a landlord knows, or has reason to know, that a condition exists involving foreseeable unreasonable risk of harm to the tenant, the landlord owes a duty to the tenant to inform the tenant of the condition and of any attendant risk involved in which the condition is of such nature that the landlord would have no reason to expect that the tenant would discover the condition or realize the risk.  This duty extends to persons who later come upon the premises with the consent of the tenant.  The landlord is subject to liability for a breach of this duty.

[¶19] Gibson objected to this instruction because it was confusing and did not fairly advise the jury as to the law.  The trial court took the matter under advisement.

[¶20] The next day the trial court presented the instruction package to the parties as provided by Rule 51, N.D.R.Civ.P.  Instruction 17.05 was in, but with nothing on the duty of the tenant to warn.  Gibson again took exception to the instructions in regard to this error:

On the jury instruction on Unsafe Condition of Premises, I believe the case law is quite clear that the tenant owes a similar duty to a guest that comes on the premises if the tenant knows or has reason to know of a condition involving foreseeable unreasonable risk of harm to a guest and does not inform the guest.  So I think the instruction, the way it reads and as the court intends to give it, is incomplete and confusing.  I think it would be less confusing if the court added the duty of the tenant to a guest which is stated in the case 
Francis v. Pic
.

The trial court again noted the objection on the record and overruled it.

[¶21] Gibson argues the jury was not given instructions that encompass the entire law on the issue of the duty to warn.  Gibson argues that a tenant has an obligation to warn invitees about known dangerous conditions on the premises and that the instruction the court gave does not state anything about that duty.  
Francis
, 226 N.W.2d at 656.  The district court stated it was submitting the instruction on a landlord’s duty to warn without also submitting the similar instruction on a tenant’s duty, based upon the holding in 
Bellemare v. Gateway Builders, Inc.
, 420 N.W.2d 733 (N.D. 1988).  The holding in 
Bellemare
, however, involved a commercial lease.  
Id.
  We stated in 
Bellemare
 that “[p]erhaps residential leases are sufficiently different from other leases as to warrant different treatment.”  
Id.
 at 741.

[¶22] Under North Dakota law, a tenant has a duty to warn if the tenant knows of a dangerous condition.  
Jacobs v. Anderson Bldg. Co.
, 459 N.W.2d 384, 386 (N.D. 1990).  In 
Francis
, this Court was confronted with the issue of what reasonable notice should be given to a social guest of a lessee about dangerous conditions arising in a single-dwelling home.  
Francis
, 226 N.W.2d at 656.  Where a social guest of a lessee brought an action against a landlord for injuries she sustained after falling down a flight of steps, this Court applied Restatement (Second) of Torts § 358 (1965), which adds an exception to the general rule of landlord nonliability.  
Id.
 at 655-57.  Section 358 states, in part:

(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if 

(a) the lessee does not know or have reason to know of the condition or the risk involved, and

(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

Id.
 at 657.

[¶23] Section 358 implies that along with the landlord’s duty to warn, the tenant also has a “duty to warn” a social guest entering the premises about any dangerous conditions on the property.  
Id.
  Jackson, the tenant, testified at trial that she was aware of the defect in the floorboard of the entry shed and had asked Gibson to fix it.  Her knowledge of the defect and its need of repair implies that she had reason to know about the risk involved.  Gibson testified that he did not know about the defect in the floorboard.  All questions of fact having any bearing on negligence should have been submitted to the jury, and the jury should have been given the correct law to apply.  The instructions as given, taken as a whole, did not correctly and adequately inform the jury on essential issues in the case.  
See
 
State v. Olander
, 1998 ND 50, ¶ 18, 575 N.W.2d 658; 
Beilke v. Coryell
, 524 N.W.2d 607, 609 (N.D. 1994).  Gibson requested the correct law and has a right to an instruction on the tenant’s “duty to warn.”  The district court erred.

[¶24] The question then is whether the district court’s error is harmless.  
Interest of B.G.
, 477 N.W.2d at 822.  Tenant liability, along with landlord liability, is a central issue in this case.  Because the court admitted instruction 17.05, but not 17.10 with Gibson’s requested correction, the jury was given the landlord’s duty to warn but not the tenant’s duty to warn.

[¶25] Although the jury found the tenant Jackson 30% responsible, the jury, based on the evidence before it, could have found the liability based on Jackson’s failure to maintain the premises.  The jury was instructed on the tenant’s duty to maintain the premises in a good and safe condition.  At trial, Gibson testified Jackson would leave the door to the shed open and would leave the window up on the storm door outside the entry so rain and snow could come in.  Jackson herself testified she did not have a rug inside the door of the entry shed, and the floor would become wet from tracking snow, mud, and rain into the entry.  Jackson’s sister also testified that she observed times when the entry shed floor would be wet from snow.  Gibson also testified that he reported Jackson to social services, and eventually evicted her for uncleanliness on the property.  Gibson also testified that he did not know of the defect.  Jackson testified she knew of the defect but did not fix the defective floor because she was waiting for Gibson to fix it.  The jury could have found Jackson 30% liable solely on the basis that she did not take care of the property in a clean and safe manner and that the defect in the floor, and the accident, resulted in part from her negligent maintenance.  We cannot conclude the error was harmless.

[¶26] Because the error affected the jury’s view of liability, we conclude that the error affected a substantial right of Gibson’s.  We reverse and remand for a new trial.

 

B

[¶27] Gibson argues the district court erred in admitting the testimony and evidence presented by Dr. Williams.

[¶28] Prior to trial, Gibson moved the district court to exclude Dr. Williams’ entire testimony.  At trial, Gibson moved the district court to exclude Dr. Williams’ testimony on the basis that the Rittenours had not seasonably and accurately supplemented their interrogatories.  Gibson was unaware of two of Rittenour’s visits to Dr. Williams, and was not informed of the subject matter that Dr. Williams would testify to.

[¶29] The decision to admit expert testimony rests within the discretion of the district court and will not be reversed in the absence of a showing of abuse of discretion.  
Botnen v. Lukens
, 1998 ND 224, ¶ 12, 587 N.W.2d 141.  On appeal, we are reluctant to interfere with the broad discretion of the trial court to determine the qualifications and usefulness of expert witnesses.  
Myer v. Rygg
, 2001 ND 123, ¶ 8, 630 N.W.2d 62.  In 
Myer
, this Court upheld a trial court’s determination that a police officer was able to testify to whether the excessive speed of a motorcycle was a contributing factor in the accident involved in the case.  
Id.
 at ¶ 6.  The trial court stated that although the officer himself had not done a precise scientific calculation, he was still qualified to render his opinion on the matter because of his training and experience.  
Id.

[¶30] Upon Gibson’s objection to Dr. Williams’ testimony on future economic loss, the district court asked Dr. Williams whether he could testify about the future economic damages to a medical certainty.  After Dr. Williams responded and stated his experience, the court allowed him to proceed on that basis.  We will not address whether the district court decision to allow Dr. Williams to testify to a medical certainty was an abuse of discretion; however, we note that the Rittenours failed to comply with the court’s discovery orders.

[¶31] “Parties must fully, completely, and fairly disclose the subject matter on which their expert witnesses will testify at trial and the substance of their expert witnesses’ testimony.”  
Wolf v. Estate of Seright
, 1997 ND 240, ¶ 17, 573 N.W.2d 161 (citing N.D.R.Civ.P. 26(e)(1)(B)).  “The purpose of the disclosure requirement is to eliminate surprise at trial.”  
Id.
  The Rittenours did not specifically answer the interrogatories pertaining to expert witnesses, and their supplemental responses were neither complete nor accurate.

[¶32] Not until the pretrial conference on July 13, 2000, did the Rittenours mention Dr. Williams might be a possible witness.  The district court had set an October 1, 2000, discovery deadline, and on September 28, 2000, only two days prior to the deadline, the Rittenours sent their supplementation specifying Dr. Williams as one of three potential experts that might testify.  The Rittenours stated Dr. Williams was to testify only as to the impairment, disability, permanency, and effect on Rittenour’s daily living activities, as well as describe the injuries she received as a result of the accident.  Dr. Williams’ actual testimony was about Rittenour’s future economic and noneconomic damages.  The Rittenours did not specify in any of their supplemental responses that this would be the substance of Dr. Williams’ testimony.  The Rittenours argue Gibson should have been aware of the substance to which Dr. Williams would testify, based on a reading of Dr. Williams’ medical records on Rittenour.  However, a full reading of the medical records does not reveal any indication that Dr. Williams would testify as to future economic or noneconomic damages.

[¶33] Gibson also states he was not provided Rittenour’s October 10th and November 9th medical records and was therefore unable to properly prepare for a cross-examination of Dr. Williams.  The Rittenours argue they no longer had a duty to supplement because Gibson was provided with signed medical releases.  Providing signed medical releases, however, does not relieve the opposing party of the requirement of full disclosure.  Had the Rittenours provided a more timely and specific disclosure, as required by N.D.R.Civ.P. 26(e)(1)(B), Gibson might have conducted more discovery.

[¶34] Having already decided to reverse and remand for a new trial, we need not decide whether this failure to supplement, by itself, would justify a new trial.

 

C

[¶35] Gibson argues the district court erred in excluding photographs of the interior of the home while allowing photographs of the exterior.  Under N.D.R.Ev. 402, “[a]ll relevant evidence is admissible, except as otherwise provided . . . .”  Relevant evidence is “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”  N.D.R.Ev. 401.  A district court has wide discretion in deciding whether proffered evidence is relevant, and we will not reverse the court’s decision to admit or exclude evidence on the ground of relevance unless the court has abused its discretion.  
Brandt v. Milbrath
, 2002 ND 117, ¶ 13, 647 N.W.2d 674.  The trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner.  
First National Bank and Trust Co. v. Brakken
, 468 N.W.2d 633, 636 (N.D. 1991).

[¶36] Under N.D.R.Ev. 103(a), “[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . .”

[¶37] The district court did not abuse its discretion in finding the photographs of the outside entrance relevant and finding the photographs of the bedroom and bathroom irrelevant.  The photographs of the outside entrance showed the jury a portion of the accident scene, while the pictures of the bedroom and bathroom were areas unrelated to the accident scene.  We conclude that the district court’s refusal to admit Gibson’s requested photographs did not affect his substantial rights as a party.

 

D

[¶38] Gibson argues the district court erred in refusing to allow his character witness to testify.  “We will not overturn a trial court’s exclusion or admission of evidence, unless the court abused its discretion.”  
State v. Gagnon
, 1999 ND 13, ¶ 9, 589 N.W.2d 560 (citing 
State v. Clark
, 1997 ND 199, ¶ 26, 570 N.W.2d 195).  “A trial court abuses its discretion when it acts in an arbitrary or capricious manner or misapplies or misinterprets the law.”  
Id.

[¶39] Gibson argues that his character was attacked at trial by the testimony of Jackson and her sister and thus he should have been afforded a character witness to rebut such attacks on his character.  Under N.D.R.Ev. 405(a), character evidence may be presented through testimony as to reputation or testimony in the form of an opinion.  However, character evidence is restricted to cases in which character is in direct issue or is used on cross-examination to rebut an assertion by a witness concerning a person’s character.  
Gagnon
, 1999 ND 13, ¶ 13, 589 N.W.2d 560 (citing 
State v. McIntyre
, 488 N.W.2d 612, 617 (N.D. 1992)).  In this case, Gibson’s character was not put in issue; therefore, Gibson was correctly denied testimony by a character witness under Rule 405(a), N.D.R.Ev.

 

E

[¶40] Gibson argues the district court erred in finding the evidence sufficient to uphold the jury verdict.  “We uphold special verdicts on appeal whenever possible and set aside a jury special verdict only if it is perverse and contrary to the evidence.”  
Anderson v. Jacobson
, 2001 ND 40, ¶ 6, 622 N.W.2d 730 (citing 
Fontes v. Dixon
, 544 N.W.2d 869, 871 (N.D. 1996)).  We will examine both the law of the case and the evidence to determine whether the verdict is logical and probable or whether it is perverse and clearly contrary to the evidence.  
Id.

[¶41] A district court should not disturb a jury’s verdict for damages unless the amount is “against the weight of the evidence” or is “so excessive or inadequate as to be without support in the evidence.”  
Nesseth v. Omlid
, 1998 ND 51, ¶¶ 12-13, 574 N.W.2d 848.  When injuries are uncertain and a jury’s decision is based upon the opinions presented at trial, it is entirely within the jury’s discretion to determine and find the amount of damages.  
Id.
 at ¶ 13.  “‘[I]t would be an invasion of the jury’s function for the court to direct the finding of a certain amount.’”  
Usry v. Theusch
, 521 N.W.2d 918, 919 (N.D. 1994) (quoting 
McCommon v. Hennings
, 283 N.W.2d 166, 169 (N.D. 1979)).

[¶42] According to evidence presented at trial, Rittenour’s total future medical bills could exceed $700,000.  The jury awarded future economic damages in the amount of $300,000 and future noneconomic damages in the amount of $50,000.  The district court found that the amounts were not excessive and were not against the weight of the evidence.  The district court did not abuse its discretion.

 

III

[¶43] The judgment of the district court is reversed, and the case is remanded for a new trial.

[¶44] Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

Maring, Justice, dissenting.

[¶45] I respectfully dissent.  I am of the opinion the trial court did not abuse its discretion in denying Gibson’s motion for a new trial.

[¶46] On July 13, 2000, the trial court ordered that jury instructions were to be submitted by November 3, 2000.  Rule 51, N.D.R.Civ.P., provides that the trial court “may require each instruction to be written on a separate sheet, provided North Dakota pattern jury instructions may be requested by reference to instruction number only.”  In a belated response to the trial court’s order that written instructions be filed with the court, Gibson filed on November 6, 2000, “Defendant’s Requested Jury Instructions,” which was a list by reference to number only of thirty-nine North Dakota Pattern Jury Instructions (“N.D.J.I.”), with the exception of N.D.J.I. Civ. No. 1.22, “Statement of Defense,” which was attached and typed with information particular to this case.  Gibson’s list by reference to number only included N.D.J.I. Civ. No. 17.10 entitled “Duty of Possessor to Lawful Entrant - Injury Caused by Condition of Premises.”  Gibson even later requested two additional instructions in writing, one dated November 10, 2000, and one dated November 13, 2000.  The additional instructions requested were N.D.J.I. Civ. No. 17.08, “Duty of Occupant of Premises,” which was submitted with a copy of the pattern jury instruction attached to the request and a written jury instruction entitled “Tenant obligations - Maintenance of dwelling unit,” derived from N.D.C.C. § 47-16-13.2.  Both of these were given by the trial court.  The trial of this case commenced on November 13, 2000, and lasted seven days.

[¶47] On November 21, 2000, the trial court provided both parties with the jury instructions that it proposed to give and asked for exceptions to be noted.  At that time, the trial court stated:

[Y]ou have in front of you the jury instructions that are pretty much what you have requested. . . .  We don’t have to keep them all.  Some tend to be a little redundant.  But the only one probably in there that wasn’t requested—I have put in one that the defendant later requested for Tenant Obligations - Maintenance of dwelling unit, I think that is appropriate—then I also felt I should go to the other section of the Code, the preceding section, and put in the Landlord Obligations.

[¶48] The trial court asked for exceptions to Gibson’s proposed N.D.J.I. Civ. No. 17.10, “Duty of Possessor to Lawful Entrant - Injury Caused by Condition of Premises.”  The Rittenours’ attorney stated he would leave it in, but Gibson’s attorney asked the court to alter the pattern jury instruction by changing the word “landowner” to “possessor,” arguing the pattern jury instruction was inconsistent because it referred to landowner in one part and possessor in another part.  The Rittenours’ attorney then suggested they “pull it” if Gibson’s attorney was concerned about confusion.  The court then asked Gibson’s attorney:  “Mr. Klemin, do you object to pulling it out?”  Gibson’s attorney responded:  “Not really.  But I do think it is a correct statement of North Dakota law.  The law does not impose all the things on the landlord it imposes on whoever is the possessor.”  The trial court, receiving Gibson’s attorney’s agreement to pull N.D.J.I. Civ. No. 17.10, pulled it.

I

[¶49] N.D.J.I. Civ. No. 17.10 is derived verbatim from 4 Minnesota Practice, Jury Instruction Guides (2 ed. 1974), JIG II, 330 G-5.  The Minnesota Jury Instruction 330 G-5 was derived from the seminal case of 
Peterson v. Balach
, 199 N.W.2d 639 (Minn. 1972), and subsequently approved by the Minnesota Supreme Court.  
See, e.g.
, 
Bisher v. Homart Develop. Co.
, 328 N.W.2d 731, 733 (Minn. 1983); 
Conover v. Northern States Power Co.
, 313 N.W.2d 397, 406 (Minn. 1981); 
Flom v. Flom
, 291 N.W.2d 914, 917 (Minn. 1980).

[¶50] Gibson complains on appeal that the trial court erred when it would not modify N.D.J.I. Civ. No. 17.10 as he verbally requested on November 21, 2000.  Gibson took the position the pattern jury instruction he originally requested was inherently inconsistent.  Gibson, however, overlooks the fact that he agreed to withdraw his request for that jury instruction.  Gibson never submitted a written instruction modifying the pattern jury instruction.  Once he withdrew his request for N.D.J.I. Civ. No. 17.10, there was nothing before the trial court.  Gibson waived his right to that jury instruction.  
See
 
State v. Olander
, 1998 ND 50, ¶ 14, 575 N.W.2d 658 (“Forfeiture is the failure to timely assert a right, while waiver is the intentional relinquishment of a right, . . .”).

[¶51] Gibson decided instead to verbally request that one of the Rittenours’ proposed instructions, N.D.J.I. Civ. No. 17.05, “Unsafe Condition of Premises,” be modified by the court.  Gibson’s attorney argued that:  “The law is clear that the tenant also has a duty to warn if the tenant knows.  This is only one-sided because it only talks about the landlord having a duty.”  The trial court, however, was never provided with a requested written instruction modifying N.D.J.I. Civ. No. 17.05 or even with suggested language by Gibson.  Even on appeal, Gibson has not provided the instruction he claims he wanted.  Further, the trial court was never provided with any case law on point concerning the duty to warn owed by a tenant to an invited guest.  The trial court took the matter under advisement until it could read 
Francis v. Pic
, 226 N.W.2d 654 (N.D. 1975), and 
Bellemare v. Gateway Builders, Inc.
, 420 N.W.2d 733 (N.D. 1988), the two cases suggested by Gibson’s attorney.

[¶52] When the trial court ruled on Gibson’s objection to N.D.J.I. Civ. No. 17.05, it noted that 
Bellemare
 involved a tenant who sued a landowner and that the lease was an agricultural lease, not a residential lease.  
Francis
 involved the issue of the duty owed by a landlord to a tenant’s social guest.  Neither of these cases involved a tenant’s duty to warn a social guest of the tenant.  The trial court overruled Gibson’s objection to N.D.J.I. Civ. No. 17.05, “Unsafe Condition of Premises.”

[¶53] American Jurisprudence 2d comments on requests for jury instructions saying,

When counsel for a party desires to have the court give instructions upon particular issues not covered in the general charge, he should draw the specific instruction desired and present it to the court and ask that it be given to the jury.  Such requested instructions are often required by express provisions of statute or rule of court to be in writing.

75A Am. Jur.2d 
Trial
 § 1084 (2002).

[¶54] Rule 51(b), N.D.R.Civ.P., reads:

Requested Instructions.  At the close of the evidence or at an earlier time during the trial as the court reasonably directs, any party may file proposed jury instructions.  The court may require each instruction to be written on a separate sheet, provided North Dakota pattern jury instructions may be requested by reference to instruction number only.  The court shall inform counsel in writing of its action upon requested instructions prior to their argument to the jury.  All instructions given by the court to the jurors must be read or given to them orally by the court without disclosing whether the instructions were requested.

[¶55] Here, the trial court did order that jury instructions were to be submitted by November 3, 2000.  The jury instructions dated November 6, November 10, and November 13, 2000, were in writing.  On November 21, 2000, however, just before the case went to the jury, Gibson orally requested an instruction on the duty of a tenant to warn a social guest.  Our Court addressed in 
State v. Olson
, 356 N.W.2d 110, 114 (N.D. 1984), whether or not a trial court committed reversible error by not giving a jury instruction which was orally proposed to the trial judge after proposed instructions had been submitted.  In 
Olson
, defense counsel requested an instruction as to conscious action during a discussion about jury instructions in chambers.  Defense counsel, however, did not offer a specific instruction on conscious action, but instead asked the trial court to compose such an instruction.  No instruction on conscious action was given.  Our Court framed the question presented as “whether or not counsel for Olson was obliged to submit a written jury instruction in order to have preserved Olson’s objection for appeal.”  
Olson
, at 114.  We concluded the trial court did not commit reversible error:

If a defendant desires more comprehensive instructions on any phase of the case, he must submit written instructions with the request that they be given.  If a party fails to make such a request he cannot predicate error upon omissions in the charge given.  Counsel will not be excused for failing to comply with a rule to present requested instructions in writing merely because the trial judge indicates in advance that he will not give the instruction requested.  The reason for the requirement for written instructions is that a trial judge must be allowed an opportunity to examine the substance of the requested instruction in order to facilitate a proper ruling on that request.  The desired result is a ruling by the trial judge that will allow the instructions to fully and accurately inform the jury of the applicable law.  Additionally, by requiring requested jury instructions to be in proper form, we, as a court of review, will be able to determine from the record the correctness of the trial court’s ruling.

Here, counsel failed to tender a written jury instruction on “conscious action.”  In fact, counsel attempted to shift his duty of drafting a specific instruction on conscious action to the judge.  We hold that it was counsel’s duty to draft a specific instruction on conscious action and to submit it to the trial judge.  Because Olson did not submit a written jury instruction she may not predicate error upon the trial court’s refusal to give the conscious-action instruction unless the trial court committed reversible error by so ruling.

Id.
 (internal citations omitted); 
see also
 
State v. Marks
, 452 N.W.2d 298, 304-05 (N.D. 1990); 
State v. Erickstad
, 2000 ND 202, ¶ 18, 620 N.W.2d 136.

[¶56] Because Gibson never submitted a written jury instruction, he has not preserved the issue for appeal.  
See
 
Olson
, 356 N.W.2d at 114; 
Marks
, 452 N.W.2d at 306; 
Erickstad
, 2000 ND 202, ¶ 18, 620 N.W.2d 136.  He, therefore, may not predicate error upon the trial court’s refusal to give the instruction on the duty of a tenant to warn a social guest.  
See
 
Olson
, at 114.  Unlike in criminal cases where N.D.R.Crim.P. 52(b) provides for obvious error analysis, our court, in civil cases, has held where there is no objection the instructions become the law of the case.  
See
 
Barta v. Hinds
, 1998 ND 104, ¶ 8, 578 N.W.2d 553; 
Delzer v. United Bank of Bismarck
, 527 N.W.2d 650, 654-55 (N.D. 1995); 
Erickson v. Schwan
, 453 N.W.2d 765, 768 (N.D. 1990).  Without the preservation of the objection, the jury instructions given became the law of the case.  
See
 
Weisenberger v. Senger
, 381 N.W.2d 187, 189 (N.D. 1986) (concluding that appellants “waived their right to raise this issue on appeal” because they “failed to preserve their objection to the court’s failure to give the requested [jury] instruction . . . .”).

II

[¶57] Even if the majority were correct that failure to give this instruction is error, Gibson has not proven it affected his substantial rights under N.D.R.Civ.P. 61.  
“Under N.D.R.Civ.P. 61, no error is ground for granting a new trial or setting aside a verdict unless refusal to do so is inconsistent with substantial justice, and at every stage of a proceeding, a court must disregard any error or defect which does not affect the substantial rights of the parties.
”  
Howes v. Kelly Servs., Inc.
, 2002 ND 208, ¶ 5.  “It is well settled in this State that on appeal, the appealing party has the burden of proof of establishing not only that the trial court erred but that such error was highly prejudicial to his cause.”  
Filloon v. Stenseth
, 498 N.W.2d 353, 356 (N.D. 1993) (quoting 
Allen v. Kleven
, 306 N.W.2d 629, 634 (N.D. 1981)).

[¶58] In 
Praus v. Mack
, 2001 ND 80, ¶ 43, 626 N.W.2d 239, Praus contended the trial court committed reversible error when it failed to instruct the jury about specific duties established by federal regulations.  We held:  “Even if Praus’ requested instructions would have more fully informed the jury of regulatory duties, the error, if any, in failing to give the instructions was not reversible error.  A trial court’s failure to instruct the jury about the violation of a specific statute is not prejudicial error if the complaining party had the opportunity to argue the theory to the jury and the instructions given allowed for a finding of negligence if the jury believed the complaining party’s evidence.”  
Id.
 at ¶ 44; 
see also
 
Olson
, 356 N.W.2d at 115 (“Although an instruction on conscious action was not given, counsel was free to argue and did argue to the jury that Olson was unconscious after the accident and could not conform to the requirements of the law.  We believe that the issue of conscious action was presented fairly to the jury.”).

[¶59] The majority opinion never addresses the entire record in this case in determining whether Gibson’s substantial rights were affected.  Gibson put in evidence testimony about Jackson’s failure to verbally warn Rittenour and failure to post a written warning sign.  Gibson argued to the jury that the tenant, Cheryl Lynn Jackson, was negligent because she knew of the soft spot in the floor and did not put up a warning sign on the doorway or warn Rittenour about it by telling her to watch out for the floor.  Gibson also argued Jackson’s sister, Misty Ruiz, knew about the problem and didn’t warn anybody.  In closing argument, Gibson’s attorney argued:

Now, Orvilee Gibson, Shorty Gibson, says that he didn’t know there was a problem.  He acknowledges that if he had known that there had been a problem that it was his duty to fix it.  But we do know that Cheryl Lynn Jackson knew that there was a problem.  She said so.  Over and over.  But yet knowing that there is a problem there which is dangerous to anyone, there is no sign there.  There is no sign warning Cindy.  She can see photographs in the courtroom just fine but she couldn’t see that sign.  But even if she couldn’t see a sign, her children who are 11, 12, 13 could have when they are right there with her.  They could have seen one if there was one there.  There was no sign warning the general public.

Donnie Rittenour had been in this trailer.  He stepped on that same spot.  There was no sign to warn him.  Cheryl Lynn Jackson did not tell him about that.  So there are obligations on the part of the tenant.  There are obligations on the part of the landlord.  There is no question that both the landlord and tenant have certain obligations.

Later in his closing argument, he said:

Did Cheryl say anything to you about the floor before you went in or before you left that day?  “She didn’t say anything to me.”  Not before she went in, not before she left.  “When you left, she didn’t say anything to you like watch out for the floor itself?”  “No.”  Now we are talking about the area where she fell is right in the middle of the doorway.  “Cheryl didn’t tell you about any problem.”  “She didn’t talk to me before I went in.”  And Misty who was aware of the problem, so she says — Misty is Cindy’s good friend.  Misty was babysitting Nicole and took Nicole down to Cheryl Lynn’s trailer.  Misty left Nichole’s [sic] jacket there.  Misty told Cindy that her jacket was down there.  Misty didn’t tell Cindy or Donnie either about a problem with the floor and she knew — she knew she was going down to get her jacket.

Rittenour responded in her argument that Jackson did not have time to warn Rittenour “because [Jackson’s] kids let her into the mobile home” and 

[t]hirdly, in the midst of the chaos and her kids screaming, Cindy decided it was time to get out of there and as Cheryl was proceeding down the rear hallway Cindy took that opportunity to leave.  The next thing Cheryl Lynn Jackson knows boom, she’s through the floor.  There was no time to warn her.  Her attention was diverted and the circumstances surrounding the fall and her leaving give understandable reason for her not warning Cindy of this soft spot in the floor.

Rittenour also argued she is legally blind and could not have seen a warning sign put up on the door anyway.  The issue of failure to warn on the part of the tenant was fully argued to the jury.

[¶60] Further, the trial court’s instructions were all correct statements of the law.  In addition to the instructions on specific duties of the landlord/owner and the tenant, the trial court instructed the jury:

RESPONSIBILITY FOR CONDUCT

Everyone owes a duty without contract to refrain from injuring the person or property of another or infringing upon any rights of another.  
Everyone is responsible
 not only for injury caused by willful acts 
but also for injury to another person caused by ordinary negligence in the management of one’s property or person
.

ORDINARY NEGLIGENCE

“Ordinary negligence” is the lack of ordinary care and diligence required by the circumstances.  Ordinary care or diligence means such care as a person of ordinary prudence usually exercises about one’s own affairs of ordinary importance.

Negligence involves a lack of such concern for the probable consequences of an act or failure to act as a person of ordinary prudence would have had in conducting one’s own affairs
.  It is the lack of such care as persons of common sense and ordinary prudence usually exercise under the same or similar circumstances.  Negligence is a relative term.  Whether a certain act or failure to act is negligence depends upon the facts and circumstances of each particular case.

The duty to use care is based upon knowledge of danger
.  The care that a person must exercise in a particular situation is in proportion to the degree of danger of injury to oneself or to others in the act to be performed.  The care necessary to constitute the ordinary care required by a person upon any particular occasion is measured by reference to the circumstances of danger known to one at the time or which the person should reasonably have foreseen.  The greater the danger, the greater is the care required.

A person is presumed to have performed one’s duty and to have exercised ordinary care, unless the contrary is shown by the greater weight of the evidence.  The mere fact that a mishap occurred, considered alone is not in itself evidence of negligence on the part of any of the people involved.  You have no right to assume that the mishap was caused by negligence or other wrongful conduct of anyone.

If the standard of care required in any given situation is prescribed by the laws of this state, a failure to observe that standard is evidence of negligence.

(Emphasis added.)  The jury instructions as a whole and the argument of counsel allowed the jury to find the tenant, Cheryl Lynn Jackson, negligent for a failure to warn.

[¶61] In addition, the verdict is consistent with the jury’s knowledge that the tenant owed a duty to warn.  The jury found Gibson, the landlord, 35% at fault and Jackson, the tenant, 30% at fault, consistent with both owing similar duties to Rittenour.  Even more persuasive is the jury finding “others” 10% at fault, which under the evidence could only have referred to Misty Ruiz, Jackson’s sister, who knew of the floor problem and who Gibson argued was at fault for failing to warn Rittenour.  The trial court’s failure to instruct specifically on the duty to warn was not, on the record of this case, prejudicial error affecting substantial rights or requiring a new trial.

III

[¶62] Gibson argues insufficiency of the evidence to support the jury verdict as to future economic and non-economic damages.  Gibson further argues the testimony of Dr. Tyson Williams was speculative and hearsay.  Our Court has held that when a party requests a new trial on the grounds that there was insufficient evidence to justify the verdict, the trial judge must make the decision by weighing the evidence.  
Okken v. Okken
, 325 N.W.2d 264, 269 (N.D. 1982).  Our Court reviews the trial court’s denial of a motion for a new trial by viewing the evidence in the light most favorable to the verdict.  
Nesseth v. Omlid
, 1998 ND 51, ¶ 13, 574 N.W.2d 848.  The testimony of both Rittenour and Dr. Williams supports the jury’s award of future economic and non-economic damages.  Both testified regarding Rittenour’s permanent impairment and disability resulting from the injuries sustained.  Dr. Williams testified that as a result of Rittenour’s permanent injuries, she would incur future medical expenses.  The trial judge concluded that based on the evidence, the amounts of the damages were not excessive and were not against the weight of the evidence.

IV

[¶63] Gibson argues that he should be granted a new trial based on N.D.R.Civ.P. 59(b)(3), which provides for “Accident or surprise which ordinary prudence could not have guarded against.”  Gibson fails to cite any case law to support his argument.

[¶64] The Rittenours first revealed Dr. Williams as an expert witness at the pre-trial conference and next in answers to interrogatories on September 28, 2000.  The answers to interrogatories indicated Dr. Williams would testify regarding the “impairment, disability, permanency and effect on activities of daily living of Cindy Rittenour regarding the injuries” caused by the accident.  The discovery cut-off date was October 1, 2000.  Gibson never moved for a more definite answer to the interrogatories, nor did he move for answers to be compelled to this interrogatory.  Instead, Gibson made a Motion in Limine on October 2, 2000, to exclude Dr. Williams’ testimony regarding the “impairment, disability, permanency and effect on activities of daily living of Cindy Rittenour.”  The basis of the motion was that Rittenour had not timely supplemented her answers to interrogatories.  On October 18, 2000, the trial court denied the motion after reviewing the electronic recording of the pre-trial conference.  The trial judge found Gibson “was given reasonable notice at the pretrial conference that the medical doctors or some of them would be called to give expert testimony.”

[¶65] Gibson did not ask the court for leave to take a discovery disposition of Dr. Williams at anytime between October 18, 2000, which was the day his motion was denied, and November 13, 2000, which was the day the trial began.  Gibson also did not bring a motion to compel more specific answers to his interrogatories concerning expert witnesses.  At trial, the trial court gave Gibson a continuance for one day because of a claim that he did not know the doctor would testify on future economic and non-economic damages.  Gibson never objected to the court’s remedy nor requested a further continuance of the trial.

[¶66] It is my opinion that the answer to interrogatories, indicating that the doctor would testify about the permanent injury to Rittenour, indicated that the doctor would testify about future pain and suffering and future medical expenses that would be incurred as a result of the permanent injury.  As the majority states, the trial court’s decision to admit or exclude expert testimony is within the discretion of the trial court and we are reluctant to interfere with the trial court’s broad discretion.

[¶67] I disagree with the majority’s statement that the Rittenours failed to comply with the trial court’s discovery orders.  The Rittenours did not fail to fairly disclose the subject matter on which their expert witness would testify at trial.  
See
 
Olmstead v. Miller
, 383 N.W.2d 817, 821-22 (N.D. 1986) (holding there must be probative evidence of a permanent injury before a jury can be instructed that impairment of future earning capacity is an item of damage and that in order to recover for future medical expenses, there must be substantial evidence to a reasonable degree of certainty that they are necessary); and 
Olmstead v. First Interstate Bank of Fargo
, 449 N.W.2d 804, 808 (N.D. 1989) (holding evidence of a permanent injury and past medical bills is sufficient to support the need for and cost of future medical treatment).  On the issue of damages in this case, the jury was instructed it could award future economic and non-economic damages.  Gibson did not object to the submission of this instruction.

[¶68] Although Gibson could have taken the doctor’s deposition either between October 18 and November 13 or during the one-day continuance or could have requested a further continuance of the trial, Gibson did nothing.  He now claims surprise.  We have said that the preferred remedy for any late disclosure is a continuance rather than an exclusion of the expert testimony.  
Reimche v. Reimche
, 1997 ND 138, ¶ 9, 566 N.W.2d 790.  We have also held that our standard of review is an abuse of discretion and that we will defer to the trial court’s decision of whether or not to exclude the testimony unless there has been a decision that is arbitrary, capricious, or unreasonable.

[¶69] I would affirm the trial court.  I, therefore, dissent.

[¶70] Mary Muehlen Maring

William A. Neumann