2014 ND 160

**TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, BMB Investment, LLC, and Brenda Barfield, Plaintiffs and Appellees**

v.

**WILLIAMS COMPANY CONSTRUCTION, INC., SKL, Inc. d/b/a Home Heating, Plumbing & Air Conditioning, Inc., and McIntosh & Associates, Inc., Defendants**

**Williams Company Construction, Inc., Appellant.**

No. 20140020.

Supreme Court of North Dakota.

July 31, 2014.

Steven L. Theesfeld, Minneapolis, MN, for plaintiffs and appellees.

Michael J. Morley, Grand Forks, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Williams Company Construction, Inc., appealed from a judgment entered by the district court following a jury trial and from a district court order denying its motion for a new trial. We affirm the judgment and the order denying the motion for a new trial.

## I

[¶ 2] In the spring of 2008, Williams Company Construction, Inc. ("Williams"), a company solely owned and managed by Glen Williams, entered into a construction contract to remodel the Friendly Smiles Cosmetic Dentistry Office owned by Dr. Brenda Barfield. Dr. Barfield previously leased the building from Glen Williams for approximately five years before she purchased the property from him in 2008. Dr. Barfield hired Williams to remodel the building because of its construction experience and familiarity and knowledge of the building. Dr. Barfield hired Williams as the general contractor to "oversee the whole project and make sure that [the construction] was all done correctly and everything was followed the way that it should be." When Dr. Barfield hired Williams, she did not know whether the remodeling work would be done by Williams or subcontractors. Dr. Barfield did not deal directly with any subcontractors during the remodeling project nor did she direct Williams to hire any specific subcontractors.

[¶ 3] During the remodel, Williams served as the general contractor and hired subcontractors to do various construction tasks. Williams hired SKL, Inc., doing business as Home Heating, Plumbing & Air Conditioning, Inc. ("Home Heating"), to install the plumbing. Williams also subcontracted McIntosh & Associates, Inc., to do the framing. Williams did not perform any physical construction during the remodeling project. Williams charged Dr. Barfield a ten percent mark-up in price for the projects he coordinated and a twenty-five percent mark-up for the projects he supervised daily, including the installation of the plumbing.

[¶ 4] As part of the project, Dr. Barfield wanted a new vanity room for her office which required the installation of plumbing pipes. Home Heating installed the water pipes to the new vanity room. A plumbing wall to house the pipes was installed by McIntosh & Associates. Another subcontractor, not a party to this appeal, installed the sheetrock on the plumbing wall. Williams approved the location of the plumbing wall. The project was completed in the fall of 2008.

[¶ 5] In December 2008, a section of a copper water pipe installed in the vanity room froze and burst. The frozen water pipe caused minor water damage and was repaired by Home Heating. During the repair process, a Home Heating employee cut a hole in the wall to locate the leak and discovered that the air in the plumbing wall was cold. The employee was concerned the pipe could freeze again and notified the Friendly Smiles Cosmetic Dentistry Office about the cold air.

[¶ 6] Dr. Barfield contacted Williams to express her concern about the pipes refreezing from the cold air. Williams went to the dentist's office and examined the hole in the wall and viewed the pipes. According to testimony, Williams told Dr. Barfield not to worry about the pipes freezing again because of circulating warm air around the hole. Dr. Barfield also wanted the hole in the wall patched, but had difficulty in securing Williams or Home Heating to fix it. Dr. Barfield made repeated requests for Williams or Home Heating to resolve the cold air issue, but they did not fix the problem. Approximately one week after the pipe was fixed, the water pipe froze and broke again, this time causing extensive water damage to the dental office.

[¶ 7] Dr. Barfield and her insurance company, Travelers Insurance, brought suit against Williams, Home Heating, and McIntosh & Associates. Dr. Barfield sued Williams for breach of contract and negligence. She also sued Home Heating and

McIntosh & Associates for negligence. Before trial, the parties stipulated that the total amount of damages was $220,046.09. Williams requested the trial court to include a jury instruction concerning the independent contractor distinction (C–55.25), and a jury instruction pertaining to the failure of a party to produce witnesses (C–80.30). The court denied the two requests. At the pretrial hearing, the parties stipulated that the case would be tried before the jury based on comparative fault. The jury was given a special verdict form and found Williams seventy percent at fault, Home Heating twenty-five percent at fault, McIntosh & Associates zero percent at fault, and Dr. Barfield five percent at fault. Judgment was entered against Williams. Williams subsequently filed a motion for a new trial arguing the court erred in denying its requested jury instructions and there was insufficient evidence for the jury to find Williams seventy percent at fault for the damages. Following a hearing, the district court denied the motion.

## II

[¶ 8] In *Leno v. K & L Homes, Inc.*, 2011 ND 171, ¶ 19, 803 N.W.2d 543, this Court held that the district court did not err in refusing to instruct the jury on modified comparative fault principles in a home construction dispute where the home buyers' cause of action against a home builder was based on breach of contract. We specifically noted, "Fault and modified comparative fault do not apply where the cause of action arises solely out of the contract between the parties, and the damages sought are for the loss of the expected bargain only." *Id.* The plaintiff home buyers originally raised negligence as one of their causes of action, but subsequently dropped the negligence claim and proceeded with the case on breach of contract and breach of implied warranties theories. *Id.* at ¶ 2.

[¶ 9] In the instant case, Dr. Barfield's complaint against Williams went to trial on both breach of contract and negligence claims. The parties stipulated to try the case to the jury based on comparative fault. The jury was instructed on comparative fault. Those instructions became the law of the case. *See Bakke v. D & A Landscaping Co., LLC*, 2012 ND 170, ¶ 17, 820 N.W.2d 357 (citing *Livinggood v. Balsdon*, 2006 ND 11, ¶ 10, 709 N.W.2d 723 ("instruction was the settled law of the case because there was no objection to the instruction. The instruction does not necessarily reflect the law to be applied in all similar cases.")).

## III

[¶ 10] Williams argues the court erred in not giving its requested independent contractor jury instruction, North Dakota Civil Pattern Jury Instruction C–55.25. Williams essentially contends it should have been allowed to argue that Home Heating was an independent contractor of Williams, and that Williams could not be held liable for any defective work performed by Home Heating.

[¶ 11] "On appeal, we review jury instructions as a whole to determine if they fairly and adequately advise the jury of the law." *Ebach v. Ralston*, 510 N.W.2d 604, 608 (N.D.1994). "Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury." *Rittenour v. Gibson*, 2003 ND 14, ¶ 15, 656 N.W.2d 691. "The instructions will be allowed if, as a whole, they fairly advise the jury of the law on the essential issues in the case." *Id.* This Court has also instructed:

Jury instructions should fairly inform the jury of the law applicable to the case. They should also fairly cover the

claims made by both sides of the case. Instructions on issues or matters not warranted by the evidence are erroneous, but constitute reversible error only when calculated to mislead the jury or, in other words, when they are prejudicial.

. . . .

When a trial court has chosen a specific instruction, a reviewing court should not be quick to second-guess its choice, if there is evidence or inferences from the evidence to support it. The trial process is still more art than science. Only scant evidence may be needed to support a jury instruction. Where there is no evidence to support a particular theory, there should be no instruction on it; but if the evidence admits of more than one inference, an instruction is proper.

*Cartier v. Nw. Elec., Inc.*, 2010 ND 14, ¶ 11, 777 N.W.2d 866.

[¶ 12] Generally, while a trial court may properly refuse a requested jury instruction not applicable to the evidence, a party is entitled to a jury instruction on a valid applicable theory if there is some evidence to support it. *Amyotte v. Rolette Cnty. Hous. Auth.*, 2003 ND 48, ¶ 5, 658 N.W.2d 324. "However, a trial court need not give instructions in the specific language requested where the substance thereof is already fully and fairly covered by another charge. The instructions should fairly cover the claims made by both sides of the case." *Wasem v. Laskowski*, 274 N.W.2d 219, 226 (N.D. 1979) (citation omitted). "[O]nly errors or defects which affect the substantial rights of the parties warrant a new trial." *Gowin v. Trangsrud*, 1997 ND 226, ¶ 9, 571 N.W.2d 824.

[¶ 13] Prior to trial, Williams submitted a list of proposed jury instructions. Among the instructions, Williams included North Dakota Civil Pattern Jury Instruction C–55.25, the independent contractor distinction. The instruction states:

Although both an employee and an independent contractor work for an employer, there is an important distinction between them. If the employer has the right to control, not merely the result, but the manner in which the work is done, as well as the method used, the person being controlled is an employee.

On the other hand, an independent contractor is one who is allowed to perform without being subject to the employer's supervision, orders, or control in respect to the details of the work. An independent contractor has absolute control of the work, as well as when and how it will be done and who may do it.

[An employer is not responsible for the fault of an independent contractor.]

N.D.J.I.-Civil C–55.25.

[¶ 14] Following the request, Williams and the other parties agreed that the case would be submitted to the jury on the basis of comparative fault. At the pretrial conference, Williams' attorney and the court discussed the jury instructions:

THE COURT: If you want to stip that this is going to be that the plaintiff has sued these three parties, we're going to submit it strictly as comparative fault, no issues of indemnity, no issues of joint and several liability for the general [contractor], that's fine with me.

MR. MORLEY [Counsel for Williams]: I'll agree to that.

The parties stipulated "that the claims of the plaintiffs and the defenses of the defendants shall be submitted to and tried before the jury, as matters and issues of comparative fault, pursuant to N.D.C.C. § 32–03.2–02." Section 32–03.2–02, N.D.C.C. states, in part:

The court may, and when requested by any party, shall direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each person, whether or not a party, who contributed to the injury. The court shall then reduce the amount of such damages in proportion to the amount of fault attributable to the person recovering. When two or more parties are found to have contributed to the injury, the liability of each party is several only, and is not joint, and each party is liable only for the amount of damages attributable to the percentage of fault of that party....

With the stipulation in place, the jury did not receive pattern instruction C–55.25, but were instead instructed to make special findings of fact concerning the respective percentages of fault, if any, allocated to each of the parties. Williams objected to the omission of its requested instructions at trial.

■ [¶ 15] On appeal, Williams contends the jury was unable to distinguish Home Heating as an independent contractor when assessing fault and damages and that the omission of this instruction denied it a fair trial. Under North Dakota law, one who employs an independent contractor is generally not liable for the negligence of the independent contractor. *Rogstad v. Dakota Gasification Co.*, 2001 ND 54, ¶ 14, 623 N.W.2d 382. This Court has noted the Second Restatement of Torts provides an exception to the general rule where an employer retains control over the independent contractor's work:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Id.* (quoting Restatement (Second) of Torts § 414 (1965)). This Court has further elaborated, "The liability created by Section 414 arises only when the employer retains the right to control the method, manner, and operative detail of the work; it is not enough that the employer merely retains the right to inspect the work or to make suggestions which need not be followed." *Rogstad*, 2001 ND 54, ¶ 15, 623 N.W.2d 382.

[¶ 16] The trial court did not specifically instruct the jury that employers are not generally liable for the torts of their independent contractors. However, after the agreement to submit the case to the jury on comparative fault, the court included instructions under N.D.C.C. § 32–03.2–02. The statute states "each party is liable only for the amount of damages attributable to the percentage of fault of that party...." N.D.C.C. § 32–03.2–02. Specifically, the jury was instructed, "Although there are three defendants in this action, it does not necessarily follow that if one is liable all are liable. Each defendant's defense is entitled to a fair consideration, and is not to be prejudiced by any fact that you find against the others." The court also instructed, "In performing services, any contractor has a duty to exercise such reasonable care, diligence, and skill as is ordinarily possessed, exercised by, and expected of contractors in the same general line of business." The jury was instructed to find fault, if any, based upon "the respective percentages of fault allocated to the defendants, the plaintiffs, or anyone else who contributed to proximately cause any damages...." Williams stipulated to this comparative fault instruction.

[¶ 17] In addition to the instructions given, the evidence presented at trial and the parties' opening and closing state-

ments do not indicate that Travelers or any of the other parties sought to impute the purported negligence of a subcontractor to Williams. The transcript reflects Travelers argued to the jury to "apportion liability . . . where you [the jury] believe the percentages of fault should lie." Instead of ascribing alleged subcontractor liability to Williams, Travelers argued Williams failed to exercise reasonable care when it did not remedy the situation after the first pipe break, and that Williams, as the general contractor, had the responsibility to ensure the finished product. There was no evidence proffered that Williams should be vicariously liable. Williams was also able to put forward its own theory of the case that Home Heating, and not Williams, was solely responsible for the water damages caused by the cracked pipe. Williams clearly argued that it was distinguishable from Home Heating and should not be responsible for Home Heating's alleged negligent plumbing.

[¶ 18] We conclude the jury instructions, taken together as a whole, fairly advised the jury of the law on the essential issues in the case, including comparative fault. Williams stipulated to try the case on the issue of comparative fault, which required the jury to determine the percentage of fault attributable to each person who contributed to the damages caused by the broken water pipe. The instructions fairly covered the claims made by the parties, and did not suggest that Williams should be responsible for anything beyond its own failure to exercise reasonable care. The omission did not affect Williams' substantial rights and does not warrant a new trial.

### IV

[¶ 19] Williams argues the court erred in denying its request for North

Dakota Civil Pattern Jury Instruction C–80.30 concerning the failure to produce a witness. Williams argues it was prejudiced because none of the plumbers for Home Heating that worked on the remodeling project testified at trial. The instruction, as applied to a witness, states:

> If a Party has failed to produce a witness and 1) the witness would be available to that Party by the exercise of reasonable diligence, 2) the witness was not equally available to the adverse Party, 3) a reasonably prudent person under the same or similar circumstances who had reason to believe the testimony to be favorable, would have produced the witness, and 4) no reasonable explanation for that failure is given, you may infer that the testimony of the witness would have been unfavorable to that Party.

N.D.J.I.-Civil C–80.30.

[¶ 20] In its order denying the motion for a new trial, the district court specifically noted this instruction was not applicable because the witnesses were equally accessible to Williams and it chose not to subpoena or take statements from the plumbers. On appeal, there is no evidence that the plumbers were inaccessible to Williams or that Home Heating failed to produce any requested witness. There is also no evidence that Williams subpoenaed any of the purported plumbers. The Home Heating plumber who fixed the initial broken pipe and discovered the cold air in the plumbing wall did testify at trial. Given these facts, the district court did not err by not giving the requested instruction.

### V

[¶ 21] Williams argues there was insufficient evidence at trial for the jury to find Williams seventy percent at fault for the damages related to the broken water pipe. Williams contends the evidence and

testimony presented to the jury "was grossly insufficient to justify this verdict of fault against Williams. . . ."

[¶ 22]   This Court has stated:

A motion for a new trial under N.D.R.Civ.P. 59(b)(6) based on a claim of insufficient evidence is addressed to the sound discretion of the district court. A district court's discretionary authority to decide a motion for a new trial is different from this Court's authority on review, which is limited to whether the district court abused its discretion. A district court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, when its decision is not the product of a rational mental process by which the facts of record and law relied upon are stated and considered together for the purpose of achieving a reasonable determination, or when it misinterprets or misapplies the law.

*Gisvold v. Windbreak, Inc.*, 2007 ND 54, ¶ 5, 730 N.W.2d 597 (citations omitted). In reviewing whether evidence is sufficient to support a special jury verdict this Court has also stated:

"We uphold special verdicts on appeal whenever possible and set aside a jury special verdict only if it is perverse and contrary to the evidence." *Anderson v. Jacobson*, 2001 ND 40, ¶ 6, 622 N.W.2d 730 (citing *Fontes v. Dixon*, 544 N.W.2d 869, 871 (N.D.1996)). We will examine both the law of the case and the evidence to determine whether the verdict is logical and probable or whether it is perverse and clearly contrary to the evidence. *Id.*

*Rittenour*, 2003 ND 14, ¶ 40, 656 N.W.2d 691.

[¶ 23]   At trial, Dr. Barfield testified she had previously complained about temperature control issues to Glen Williams when she was a tenant.  Dr. Barfield hired Williams based on its familiarity with the building.  Williams was hired to oversee the entire project and make sure it was done properly.  She testified that after the pipe froze the first time, Williams did not act to prevent the pipe from re-freezing. The jury also heard opinion testimony from Travelers' expert, Thomas Spaeth. Spaeth testified, in his opinion, the pipes froze as a result of cold air inundation that seeped into the plumbing wall.  Spaeth opined the cold air permeated the plumbing wall through voids in an exterior wall that was not properly sealed.  Spaeth testified, in his opinion, Williams did not exercise reasonable and ordinary care as the general contractor and in overseeing the creation of the plumbing wall.  Spaeth stated Williams "had to have facilitated asking somebody to build this plumbing wall and to properly do it, and possibly failed to oversee . . . the last phases of it, that everything was sealed up properly and done properly."  The jury essentially heard testimony that the exterior wall did not provide sufficient insulation for the plumbing wall and the pipes therein. Spaeth testified that if Williams would have taken appropriate action the first time the pipe froze, such measures could have prevented the pipe from freezing a second time.

[¶ 24]   Tony Gray, the plumbing service manager at Home Heating, testified the plumbing was installed within code and that Home Heating does not install insulation.  Cameron Merkel testified as an expert witness for Home Heating.  Merkel testified the cold air infiltration could have been caused by problems with an insulation vapor barrier not being sealed properly.  Merkel stated, "When a plumber puts piping in a situation like that and uses a plumb wall, there has to be some assumptions that other crafts are doing their job adequately.  One thing that a plumber has

to have is an insulated building envelope." Richard Olson, a manager from Home Heating testified that, typically, Home Heating assumes the building envelope is properly sealed and that the exterior walls would not have any holes.

[¶ 25] Geoffrey Jillson testified as an expert witness for McIntosh & Associates. Jillson opined the pipe broke when the temperature inside the plumbing wall cavity fell below freezing for a long enough period for the water in the pipe to freeze. Jillson testified the plumbing wall did not contribute to the pipe freezing. He also testified that if the proper steps had been taken after the pipe originally broke, the second major break could have been avoided. The jury also heard Jillson's opinion that the "freezing conditions existing inside the wall cavity housing the plumbing for the vanity occurred primarily due to outside air leakage into the wall cavities through unsealed joints in the exterior of the structure."

[¶ 26] Here, considering the law of the case and the testimony presented at trial, the verdict is not perverse or clearly contrary to the evidence. The evidence shows that Williams had previous knowledge about the building, including its temperature control problems. Williams was hired as the general contractor to oversee the entire remodeling project. The evidence indicates the subcontractors did not have reason to know about the sealing problems with the outside wall. Additionally, after the pipe initially broke, Williams informed Dr. Barfield not to worry about the pipe breaking again. Given these facts, the jury verdict finding Williams seventy percent at fault is a logical and probable extension of the evidence. The district court did not abuse its discretion in denying the motion for a new trial based on insufficient evidence.

## VI

[¶ 27] The district court did not err in denying Williams' requested jury instructions. There was sufficient evidence at trial for the jury to find Williams seventy percent at fault for the plaintiff's damages. We affirm the judgment and the order denying the motion for a new trial.

[¶ 28] CAROL RONNING KAPSNER, LISA FAIR McEVERS, and DALE V. SANDSTROM, JJ., concur.

I concur in the result DANIEL J. CROTHERS.