Mathias **FONTES**, Plaintiff and Appellant,

v.

Jed Eaton **DIXON**, Defendant and Appellee.

Civil No. 950272.

Supreme Court of North Dakota.

March 19, 1996.

---

Robert M. Light, Morley, Morley & Light, Ltd., Grand Forks, for plaintiff and appellant.

Jay H. Fiedler, Pearson, Christensen, Larivee, Clapp, Fiedler & Fischer, Grand Forks, for defendant and appellee.

VANDE WALLE, Chief Justice.

Mathias Fontes appealed from a judgment entered upon a jury verdict awarding Fontes noneconomic damages and the trial court's order denying Fontes' motion for a new trial. Because the special verdict answers are inconsistent and absent the trial court's explanation of its reasons for denying the motion for a new trial, we reverse and remand for a new trial.

On February 20, 1993, Fontes was a passenger in a Nodak Cab van which was dispatched by Fontes' employer, Burlington Northern Railroad, to transport Fontes and other Burlington Northern employees from Grafton to Grand Forks. While in route to Grand Forks, the van was hit from behind by a vehicle driven by Jed Dixon. Complaining of knee and back pain, Fontes sought medical attention at United Hospital's emergency room. Fontes, an engineer, did not work in his usual capacity for Burlington Northern from February 20, 1993, through July 17, 1993. During that period, Fontes received physical therapy for his knee pain and underwent arthroscopic surgery on both knees.

Alleging that Dixon negligently caused the collision, Fontes filed a personal injury claim against Dixon for damages, including wage loss, medical expenses, and pain and suffering. To prove past economic damages at trial, Fontes offered testimony from a casualty management representative for Burlington Northern who testified that between February 20, 1993, and July 17, 1993, Burlington Northern paid Fontes $18,129.19 in wage continuation payments. The representative explained that wage continuation is a volun-

tary program in which Burlington Northern will continue to pay wages to an individual who is injured while in the service of Burlington Northern until the individual is medically approved to return to work. The representative also testified that Burlington Northern paid medical benefits totaling $13,130.00 on behalf of Fontes as a result of the collision.

Dixon admitted fault for the collision but disputed that the collision was a proximate cause of Fontes' damages. Dixon offered evidence that Fontes had preexisting knee problems as early as 1985 when Fontes played men's basketball at the University of North Dakota. Dixon also offered evidence that, prior to the collision, Fontes was developing chondromalacia which is a degenerative arthritic condition, or "wear and tear" of the knee.

Returning a special verdict, the jury found that Dixon's fault was a "proximate ca[u]se" of Fontes' damages and that Fontes suffered a "serious injury" as a result of Dixon's negligence. When asked on the special verdict form "the total amount of money which would fairly and reasonably compensate Mathias Fontes for the losses he sustained as a result of his injuries," the jury awarded Fontes $10,000.00 for past noneconomic damages and nothing for past medical bills, past wage loss, future economic damages, or future noneconomic damages. The trial court ordered judgment on the jury verdict.

Fontes moved for a new trial claiming insufficiency of the evidence to justify the verdict and irregularity in the jury proceedings. Fontes argued the jury's verdict was inconsistent and inadequate as a matter of law in that the jury determined that Fontes suffered "serious injury" but did not award past medical bills or past wage loss. After a hearing on the motion, the trial court denied Fontes' motion stating that the order was "[b]ased upon all matters of record and the applicable law. . . ."

On appeal, Fontes contends the trial court abused its discretion by denying his motion for a new trial and asserts the jury's special verdict answers are irreconcilable and should be set aside. We agree.

■ We uphold special verdicts on appeal whenever possible and set aside a jury's special verdict only if it is perverse and clearly contrary to the evidence. *Slaubaugh v. Slaubaugh*, 466 N.W.2d 573 (N.D.1991); *Binstock v. Fort Yates Pub. Sch. Dist.*, 463 N.W.2d 837 (N.D.1990). The test used to reconcile apparent conflicts in the jury's verdict is:

" '[W]hether the answers may fairly be said to represent a *logical and probable decision* on the relevant issues as submitted. If after a review of the district court's judgment no reconciliation is possible and the inconsistency is such that the special verdict will not support the judgment entered below or any other judgment, then the judgment must be reversed and the case remanded for a new trial.' " *Grenz v. Kelsch*, 436 N.W.2d 552, 553 (N.D.1989) [quoting 5A Moore's Federal Practice ¶ 49.03[4], at 49–29 to 32 (1987) ].

In this instance, the jury was instructed that Dixon is a "secured person" exempt from liability to pay damages for noneconomic loss unless Fontes sustained a "serious injury." *See* N.D. Cent.Code § 26.1–41–08 [providing secured person exemption]. The jury was told that "serious injury" means "an accidental bodily injury that results in death, dismemberment, serious and permanent disfigurement or disability beyond sixty days, or medical expenses in excess of two thousand five hundred dollars." *See* N.D. Cent.Code § 26.1–41–01(21) [defining "serious injury"]. The instruction defined "disability" as "the inability to engage in substantially all of the injured person's usual and customary daily activities." *See* N.D. Cent.Code § 26.1–41–01(6) [defining "disability"].

■ Here, the jury determined that Fontes sustained a "serious injury." Because death, dismemberment, and disfigurement are inapplicable in his case, Fontes asserts that in order for the jury's finding to be reasonable, the jury had to determine Fontes had a disability beyond sixty days or medical expenses in excess of $2,500.00. Fontes argues that under either scenario he necessarily incurred past economic damages: either wage loss stemming from being disabled for 60 days or medical expenses total-

ing at least $2,500.00. The jury heard testimony that Fontes received $18,129.19 in wage continuation payments and $13,130.00 in medical benefits as a result of the collision. Because the jurors were instructed that they had a duty to award damages "proportionate to the detriment suffered," Fontes contends the verdict is illogical and inconsistent absent an award for past economic damages.

In support of the verdict and the trial court's denial of Fontes' motion for new trial, Dixon proffers his reasons for how the special verdict answers can be read logically and consistently:

"For instance, the jury could have concluded that Fontes suffered some transient pain as a result of the accident, but that the medical expenses were actually related to symptoms of his pre-existing condition. Likewise, the jury could have decided that, although Fontes was disabled for a period of 60 days, he suffered no financial loss because of his employer's voluntary wage continuation plan."

We are not convinced by Dixon's explanations. Although the jury heard testimony that Burlington Northern paid Fontes' medical bills and continued his wages while he was unable to work, the jury was instructed that it was not to consider Burlington Northern's payments when determining damages:[1]

"In this case ... Mathias Fontes ... [was] on the job with [his] employer, Burlington Northern Railroad, at the time of the automobile collision. As such, some or all of the medical bills and wage loss of [ ] Mathias Fontes ... which occurred as a result of the collision have been paid by Burlington Northern Railroad.

If the jury awards past medical expenses and past wage loss to ... Mathias Fontes, Burlington Northern may seek to be reimbursed for any expenses it has paid.

It is not material to the issues of damages, if any, that may be awarded to a Plaintiff whether any amount has been paid to or in behalf of a Plaintiff by his employer. The subject of reimbursement,

if any, is a matter which will be resolved after this trial has been concluded."

This instruction is consistent with section 32-03.2-06, NDCC, which provides that after an award of economic damages, "the party responsible for the payment thereof is entitled to and may apply to the court for a reduction of the economic damages to the extent that the economic losses presented to the trier of fact are covered by payment from a collateral source."

If, as Dixon suggests in his effort to explain away an inconsistent verdict, the jury failed to award wage loss and medical expenses because Burlington Northern continued to pay Fontes' wages and covered his medical bills, its action was directly contrary to the court's instruction and section 32-03.2-06, NDCC, on which the instruction is based.

In view of the apparent inconsistencies in the special verdict answers, we look to the trial court for its insight into the jury's verdict. *See* N.D.R. Civ. P. 59(f) [requiring trial judge to file "a written memorandum concisely stating the different grounds on which the ruling is based"]; *Nelson v. Trinity Medical Center*, 419 N.W.2d 886 (N.D.1988) [reviewing trial court's statements about the evidence]. Looking to the trial court's basis for denying the motion for a new trial in this case, we are not enlightened. The trial court's brief statement that its decision was based upon "all matters of record and the applicable law" does not apprise us of its reasons for denying the motion. In light of the jury instructions, evidence, and the trial court's lack of clarity, we conclude the jury verdict is irreconcilable, and warrants a new trial.

We reverse the judgment and remand for a new trial.

SANDSTROM, NEUMANN and MESCHKE, JJ., and BERYL J. LEVINE, Surrogate Judge.

---

1. Although the parties stated at oral argument that the jury was not instructed on "collateral source" payments, the instruction on "compensation benefits" was included in the jury instructions signed by the trial judge. *See* N.D. Cent. Code § 32–03.2–06 [providing reduction by the trial court for collateral source payments].