Filed 1/22/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 11

Continental Resources, Inc., Plaintiff and Appellee

v.

P&P Industries, LLC I 

d/b/a United Oilfield Services and 

P&P Industries, LLC, and

Pauper Industries, Inc., Defendants and Appellants

       and

Parka, Inc.,                                                                                                   Defendant

No. 20160452

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Joshua B. Rustad, Judge.

REVERSED AND REMANDED.

Opinion of the Court by McEvers, Justice.

Andrew D. Sims (argued), Paul T. Elkins (on brief), and Russell R. Barton (on brief), Fort Worth, TX, and Lawrence Bender (appeared) and Danielle M. Krause (on brief), Bismarck, N.D. for plaintiff and appellee.

Peter M. King (argued) and William H. Jones (appeared), Chicago, IL, and Lance D. Schreiner (appeared), Bismarck, N.D. for defendants and appellants.

Continental Resources v. P&P Industries

No. 20160452

McEvers, Justice.

[¶1] P&P Industries, LLC, doing business as United Oilfield Services, and Pauper Industries, Inc., appeal from a judgment entered in favor of Continental Resources, Inc., after a jury returned a verdict finding United and Pauper’s conduct constituted fraud but they did not breach their contracts with Continental.  United and Pauper argue the verdicts are inconsistent and the district court erred in limiting the amount of damages United could seek on its counterclaim.  We reverse and remand.  

I

[¶2] Continental is an oil producer doing business in North Dakota.  United was created in 2012 when it acquired Pauper and related companies along with the assets of a third company.  United and Pauper provided transportation, water hauling, and related services and materials to Continental in North Dakota.  Pauper signed a Master Service Contract with Continental in 1998, and United signed a Master Service Contract with Continental in 2013. 

[¶3] In 2014, Continental sued United and Pauper, seeking damages for claims of breach of contract, tortious breach of contract, breach of fiduciary duty, fraud, and deceit.  Continental alleged United and Pauper violated state and federal  limits and regulations on the number of hours a truck driver may drive; they violated Continental’s policy limiting the number of hours an employee may work in a day; and they engaged in improper and fraudulent billing. 

[¶4] United answered and counterclaimed, seeking damages for breach of contract, tortious breach of contract, breach of fiduciary duty, constructive fraud, and promissory estoppel.  United alleged Continental breached the contract by failing to pay for services United provided and terminating the contract without giving 30 days’ notice.  United sought damages for the full value of its business, the unpaid amounts for services and materials United provided to Continental, and other damages.  Pauper also answered Continental’s complaint, but did not bring any counterclaims against Continental.

[¶5] In December 2015, Continental moved to amend its complaint to additionally claim United and Pauper breached their contracts by allowing liens to attach to Continental properties as a result of failing to pay subcontractors and failing to defend and indemnify Continental for the claims or liens the subcontractors filed.  The amended complaint was filed in July 2016.

[¶6] Continental and United moved for summary judgment.  After a hearing, the district court denied United’s motion for summary judgment on Continental’s claims; denied Continental’s motion for summary judgment on United’s breach of contract, promissory estoppel, and tortious breach of contract counterclaims; and denied Continental’s motion for summary judgment on its fraud and breach of contract claims.  The court granted Continental’s motion for summary judgment against United’s breach of fiduciary duty and constructive fraud counterclaims.  The court also granted summary judgment on Continental’s motion related to damages and ruled, if United prevails at trial, its damages would be limited to the net profits it could have earned during the 30-day termination notice period, overall expenses of preparation, and its expenses in pursuit of reasonable efforts to avoid or minimize the damaging effects of the breach.  United moved the court to reconsider the damages issue, and the court denied the motion.

[¶7] A jury trial was held.  The jury was given a 19-question special verdict form, requiring the jury to make findings about Continental’s claims for each defendant, United’s counterclaims, and alleged defenses.  In deciding Continental’s claims, the jury found neither United nor Pauper breached its contract obligations to Continental, both United and Pauper’s conduct was fraudulent or accompanied by fraud, both United and Pauper’s conduct was deceitful or accompanied by deceit, and the jury awarded Continental $2,415,000 in damages for its claims against United but did not award Continental any damages for its claims against Pauper.  In deciding United’s counterclaims, the jury found Continental breached its contract with United, but Continental was excused from performing based on United’s prior material breach, United’s failure to perform a condition precedent, United’s fraud or deceit, and equitable estoppel.  

[¶8] United and Pauper moved for judgment to be entered in their favor or for a new trial under N.D.R.Civ.P. 50(b), 58, and 59.  United and Pauper argued they were entitled to judgment in their favor or a new trial because the jury’s verdict was inconsistent, Continental did not present sufficient evidence to support its claims of fraud and deceit, and Continental did not present sufficient evidence to support its alleged defenses to United’s breach of contract claim.  The district court denied the motion.  

[¶9] Judgment in the amount of $2,415,000 was entered against United.  Judgment on the jury’s findings was entered against Pauper.  Continental was awarded its costs and disbursements against United and Pauper, jointly and severally.

II

[¶10] United and Pauper argue they are entitled to a new trial because the jury verdict is inconsistent and cannot be reconciled. 

[¶11] A court may vacate a jury verdict and grant a new trial “if the jury has plainly disregarded the court’s instructions or the evidence in the case is such that it convinces the court the verdict was rendered under a misapprehension of the instructions.”  N.D.R.Civ.P. 59(g); 
see also
 
Moszer v. Witt
, 2001 ND 30, ¶ 10, 622 N.W.2d 223.  The district court has discretion in deciding a motion for a new trial, and the court’s decision will not be overturned on appeal unless it manifestly abused its discretion.  
Moszer
, at ¶ 10. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination.  
Johnson v. Buskohl Constr. Inc.
, 2015 ND 268, ¶ 12, 871 N.W.2d 459.

[¶12] A jury’s special verdict will be reversed on appeal only if it is perverse and clearly contrary to the evidence.  
Moszer
, 2001 ND 30, ¶ 11, 622 N.W.2d 223. This Court has adopted the following test for reconciling apparent conflicts in a jury’s verdict:

[W]hether the answers may fairly be said to represent a 
logical and probable decision
 on the relevant issues as submitted.  If after a review of the district court’s judgment no reconciliation is possible and the inconsistency is such that the special verdict will not support the judgment entered below or any other judgment, then the judgment must be reversed and the case remanded for a new trial.

Id.
 (quoting 
Barta v. Hinds
, 1998 ND 104, ¶ 6, 578 N.W.2d 553).  “Reconciliation of a verdict, therefore, includes an examination of both the law of the case and the evidence in order to determine ‘whether the verdict is logical and probable and thus consistent, or whether it is perverse and clearly contrary to the evidence.’”  
Barta
, at ¶ 6 (quoting 
Grenz v. Kelsch
, 436 N.W.2d 552, 554-55 (N.D. 1989)).  Jury instructions become the law of the case unless there is an objection to the instructions.  
Barta
, at ¶ 8.

[¶13] On the special verdict form, the jury found Continental failed to prove United breached its contract obligations to Continental.  The jury also found Continental did not prove Pauper breached its contract obligations to Continental.  The jury found there was clear and convincing evidence both United and Pauper’s conduct was fraudulent or accompanied by fraud.  In deciding United’s counterclaims, the jury found Continental breached the contract but was excused from performing by United’s prior material breach.

[¶14] United and Pauper argue both the fraud and breach of contract claims were based on improper billing practices and therefore it was inconsistent for the jury to find the conduct did not constitute a breach of contract but did constitute fraud.  They claim the jury determined United did not engage in the alleged conduct when it found United did not breach the contract, but the same conduct formed the basis for Continental’s fraud claim.

[¶15] For Continental’s breach of contract claims against United and Pauper, the jury was instructed:

Continental is required to prove by the greater weight of the evidence the following in order to recover on the claim for breach of contract against the Defendants:

1. Formation of a contract between Continental and the Defendants;

2. The Defendants breached the contract by presenting inaccurate or false charges to Continental and/or by billing for services in violation of the parties’ contract and allowing liens to be filed on wells operated by Continental; and

3. Continental suffered damages as a direct result of the breach.

You are hereby instructed that the Master Service Contracts constitute validly formed contracts between Continental and each defendant.

The jury was instructed, “Unless a party is excused from performing, a contract is breached or broken when the party does not do what it promised to do in the contract.”  The jury was also instructed that a material breach of a contract was a bar to recovering under the contract, stating:

A party that materially breaches a contract cannot seek performance of the contract by the other contracting party.  A party in material breach of a contract cannot enforce or recover on the contract.  In other words, a party that commits a first breach of the parties’ contract that is not justified by the conduct of the other, excuses the latter’s duty to give the agreed exchange under the contract.

The jury was instructed “fraud” is:

[A]ny of the following acts committed by a party to a contract, or with the party’s connivance, with intent to deceive another party thereto or to induce the other party to enter into the contract.

“Fraud” is:

1. the suggestion as a fact of that which is not true by one who does not believe it to be true;

2. the positive assertion, in [a] manner not warranted by the information of the person making it, of that which is not true though that person believes it to be true;

3. the suppression of that which is true by one having knowledge or belief of the fact;

4. a promise made without any intention of performing it; or

5. any other act fitted to deceive.

[¶16] On appeal, United and Pauper argue the jury was not properly instructed on all of the elements of fraud, but they do not contend the alleged error is relevant in deciding whether the verdicts are consistent.  Rather, they claim the verdict is irreconcilable under the instructions given and would be irreconcilable even if the court had properly instructed the jury on the elements.  United and Pauper proposed using a general verdict form and not a special verdict form, but there are no specific objections to the final verdict form or to the breach of contract instructions in the record, and any issues related to these instructions were not raised on appeal.  The jury instructions, therefore, are the law of the case.  
See Duma v. Keena
, 2004 ND 104, ¶ 7, 680 N.W.2d 627 (stating party did not raise any issues about jury instructions on appeal and the unopposed instructions became the law of the case).

[¶17] At trial, Continental argued the contract requires all work be performed in a good and workmanlike manner and to Continental’s satisfaction, and a good and workmanlike manner included following Continental’s rules and doing what it asked to be done.  Continental claimed United and Pauper breached the contract by submitting its billings in such a way to work around Continental’s rules.  The jury was informed United employees filled out field tickets providing information about the employee, including name, job performed, and hours worked; the field tickets were collected and attached to an invoice; and the invoice and field tickets were sent to Continental for review and payment.  Continental argued there was evidence of various breaches, including one employee who submitted three field tickets with different names and for different wells for the same day, which resulted in Continental being billed for 36 hours of work for that employee for one day.  
Continental asserted the contract required United and Pauper to comply with all DOT rules and regulations, but there was evidence they did not comply with all the rules and regulations.  Continental argued the contract required United not to allow liens to be attached to Continental’s properties and to indemnify Continental for any liens, but evidence established liens had been placed on Continental’s properties and Continental had been left to resolve the issues.  Continental asserted there was “no doubt” United breached the contract because it was undisputed liens were placed on Continental’s properties and there were billings that were not done to Continental’s satisfaction and in violation of its rules.  United argued its actions were proper and did not violate any rules or terms of the contract, Continental’s alleged rules did not exist, and Continental knew about United’s billing practices and agreed to them.

[¶18] Continental claimed United and Pauper’s billing practices also constituted fraud.  It argued evidence established a United owner admitted there were falsified field tickets but then told Continental it was just bad paperwork, a United supervisor directed employees to use different names on field tickets to avoid confusion and questions, and United’s billing specialist knew she was sending out bills to deceive Continental and to charge for work that was not allowed.

[¶19] Continental argued it did not breach the contract, but if the jury determined it did and found in favor of United’s breach of contract claim, the breach was excused by United’s prior breach.  Continental argued United breached the contract first by failing to comply with Continental’s rules, sending improper billings, and overbilling. 

[¶20] United and Pauper claim the verdict is inconsistent and irreconcilable because the same conduct was the basis for Continental’s breach of contract and fraud claims and the jury found their conduct was fraudulent or accompanied by fraud but found they did not engage in that same conduct for purposes of the breach of contract claim.  Continental argues the verdict is consistent because the contract does not contain any specific billing procedures and therefore the jury could determine there was no breach of the contract based on any claims about billing, but that same conduct related to billing could be the basis for the jury’s finding in favor of Continental on the fraud claim. 

[¶21] Considering the law of the case and the evidence, the jury could have decided the conduct related to billing was not a breach of contract.  The contract does not specifically address billing.  The contract states, “Contractor will begin each particular job at such time as is agreed upon between Contractor and Continental’s representatives and, once having commenced any such job, Contractor will perform all such service or work in a good and workmanlike manner and when the job is completed such service or work will have been performed to the full and complete satisfaction of Continental.”  Continental argued the overbilling and other related issues violated the terms of the contract because United and Pauper did not perform the work to Continental’s satisfaction.  The jury could have found the billing practices were not a breach of contract but did constitute fraud.

[¶22] The jury also could have found the billing practices did not constitute a breach of contract or fraud, but found other conduct constituted fraud.  Continental argued United made misrepresentations to Continental to persuade it to resume payments in December 2013 after Continental stopped payments based on audit findings about inaccurate billings and falsified field tickets.  Continental claimed evidence established United made assurances that it would not find any overbillings for other months to persuade Continental to resume payments, Continental relied on those assurances and resumed payments, but United’s statements were not true.  The jury could have determined there was clear and convincing evidence the December 2013 conduct constituted fraud but was not a breach of contract.

[¶23] The findings on Continental’s breach of contract and fraud claims can be reconciled.  However, the jury also found Continental breached the contract with United but it was excused from performing the contract by United’s prior material breach of the contract.

[¶24] Continental contends the verdicts are reconcilable by a literal reading of the jury instructions.  Continental argues the jury instruction for its breach of contract claim refers to both defendants and uses the word “and” before the lien element, but it never claimed Pauper breached the contract by allowing liens.  Continental claims the jury could have read the instruction to require it to find that both United and Pauper entered into one contract with Continental, that both parties breached their contracts, or that Continental suffered damages from breaches by both defendants.  Continental contends the jury could have found Pauper did not breach the contract by allowing liens to be filed, because Continental never claimed Pauper allowed liens, and that finding would preclude a finding of breach against both defendants but would not preclude a finding that United breached the contract for purposes of Continental’s defense for United’s breach of contract claim.

[¶25] Although it is possible the jury could have read the instruction on the elements of Continental’s breach of contract claim as technically as Continental claims, the verdict form specifically required the jury to make findings about Continental’s breach of contract claims against each defendant separately.  The verdict form required the jury to specifically find whether United breached its Master Services Contract obligations to Continental and whether Pauper breached its Master Services Contract obligations to Continental.

[¶26] The jury found Continental was excused from performing the contract with United because United committed a prior material breach.  That finding is not consistent with the jury’s finding that the greater weight of the evidence did not establish that United breached its contract obligations to Continental.  The jury found Continental did not meet its burden of proof for its breach of contract claims against United and Pauper, but then found United’s breach excused Continental’s subsequent breach.   The same conduct was the basis for Continental’s breach of contract claim and Continental’s excuse for United’s breach of contract counterclaim.  The special verdict answers are inconsistent, and therefore not logical and probable.

[¶27] When there are apparent inconsistencies in a special verdict, we look to the trial court for its insight into the jury’s verdict.  
Fontes v. Dixon
, 544 N.W.2d 869, 872 (N.D. 1996).  The district court must file a written memorandum concisely stating the different grounds on which its ruling granting or denying a motion for a new trial is based.  N.D.R.Civ.P. 59(f).  The district court, however, did not give any explanation for denying United’s motion for a new trial on this issue.  The court said it was denying the motion after considering the motion, Continental’s response, counsels’ submissions and briefing, and being fully advised on the matter.  The court gave no explanation of its decision for denying the motion, and therefore we are not enlightened by the trial court’s failure to provide any insight on the verdict.  
See
 
Fontes
, at 872.  

[¶28] The verdict is inconsistent and perverse and cannot be reconciled.  We conclude the district court’s decision to deny the motion for a new trial constituted a manifest abuse of discretion.  Because the breach of contract, fraud, and deceit claims are largely based on the same allegations, we conclude a new trial is required on Continental’s breach of contract, fraud, and deceit claims against United and Pauper and United’s breach of contract claim against Continental.

III

[¶29] United argues the district court erred in limiting the damages it could recover on its breach of contract claim against Continental.  United claims it should be allowed to recover its enterprise value because Continental’s breach caused United’s complete destruction.

[¶30] United’s answer and counterclaim sought damages for the full value of United’s business, profits lost as a result of Continental’s wrongful conduct, amounts due for services rendered that Continental refused to pay, the cost of equipment United purchased on Continental’s promise to continue doing business with United, and the cost of acquiring water and additional rights.  In deciding Continental’s motion for summary judgment against United’s counterclaims, the district court ruled United’s damages, if it prevailed at trial, would be limited to the net profits it could have earned during the 30-day notice period for termination of the contract and to overall expenses of preparation, as well as its expenses in pursuance of reasonable efforts to avoid or minimize the damaging effect of the breach.

[¶31] “Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.”  
THR Minerals, LLC v. Robinson
, 2017 ND 78, ¶ 6, 892 N.W.2d 193 (quoting 
Markgraf v. Welker
, 2015 ND 303, ¶ 10, 873 N.W.2d 26).  The moving party has the burden of showing there are no genuine issues of material fact and they are entitled to judgment as a matter of law.  
THR
, at ¶ 6.  In reviewing the court’s decision on a motion for summary judgment, we view the evidence in the light most favorable to the party opposing the motion and decide “whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.”  
Id.
 (quoting 
Markgraf
, at ¶ 10).  A court’s decision on summary judgment is a matter of law, which we review de novo on the entire record.  
THR
, at ¶ 6.

[¶32] United alleges its company was completely destroyed as a result of Continental’s refusal to pay over $4.5 million for services and materials United provided and Continental’s failure to give 30 days’ notice of termination as the contract required.  United argues a victim of a breach of contract is entitled to recover damages sufficient to put it in the position it would have occupied had the contract been fully performed, including lost profits and to recover its enterprise value if the company is destroyed by the breach of contract.

[¶33] The contract states that it is governed by the laws of the State of Oklahoma.  The parties agree Oklahoma law governs the breach of contract claims.  The Oklahoma statute providing the general rule for damages for a breach of contract states:

For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.  No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin.

23 Okla. Stat. § 21.  “The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon.”  23 Okla. Stat. § 22.

[¶34] Oklahoma courts follow these general rules on recovery of damages for breach of contract:

1) [W]here no special circumstances distinguish the contract involved from the great mass of contracts of the same kind, the damages recoverable are those as would naturally and generally result from the breach according to the usual course of things, and 2) where there are special circumstances in the contract, damages which result in consequence of the special circumstances are recoverable, if, and only if, the special circumstances were communicated to or known by both parties to the contract at the time they entered the contract.

Florafax Int’l, Inc. v. GTE Mkt. Res., Inc
., 933 P.2d 282, 292 (Okla. 1997). 

[¶35] In 
Osborn v. Commanche Cattle Indus., Inc.
, 545 P.2d 827, 831 (Okla. Civ. App. 1975), the Oklahoma Court of Appeals decided whether there was a limitation on the amount of lost profit damages a party could seek for breach of contract.  The court noted other courts have held the “breach of a contract terminable at any time upon notice entitles the aggrieved party to recover only those net profits which he could have earned during the notice period.”  
Id.
  The court said a plaintiff “should not ‘by reason of the defendant’s breach, acquire rights greater than those which the contract gave it,’” and “a party to a contract terminable by either party upon notice is never assured of performance for any time longer than the period of notice for which he bargained.”  
Id.
  The damages a party recovers for lost profits is to protect the injured promisee’s expectation interest, his prospect of a net gain from the contract; and the damages put the promisee injured by the breach in the position in which he would have been if the contract had been performed, the expectation interest does not extend any further, and the promisee may not recover more than the amount he might have gained by full performance.  
Id.
  The court said since the assurance of performance does not extend beyond the length of the termination notice period neither does the prospect of profit, and therefore the plaintiff may only recover lost profits for the length of the termination notice period.  
Id.
 at 831-32.

[¶36] United admits Continental could terminate its contract with United at any time upon 30 days’ notice.  But United contends this case is similar to 
Florafax
, in which the Oklahoma Supreme Court held the plaintiff could seek damages of lost profits beyond the time for notice of termination.

[¶37] In 
Florafax
, the plaintiff sued the defendant alleging the defendant breached its contract with the plaintiff to provide services.  
Florafax
, 933 P.2d at 286.  The jury awarded the plaintiff lost profits the plaintiff claimed it would have made from a collateral contract it had with a third party, which the plaintiff alleged it lost when the collateral contract was cancelled because the defendant breached its contract with the plaintiff.  
Id.
 at 286.  The court held lost profits from a third party collateral contract may be recovered in a breach of contract action if the damages can be said to have been within contemplation of the parties at the time of contracting.  
Id.
 at 293.  The court also said the 60-day notice of termination clause in the collateral contract did not preclude the plaintiff from recovering lost profits beyond the 60-day period.  
Id.
 at 294-95. The court stated the rule from 
Osborn
, 545 P.2d at 831, that a non-breaching party may not receive more in damages than he might or could have gained from full performance and that lost profit damages are limited to profits that could be earned during the notice of termination period is sound, but the rule did not apply.  
Florafax
, at 294.  The court explained the two cases are different because the plaintiff was not relying on a violation of the notice of termination provision by the third party to support its lost profits claim, the plaintiff alleged the breach by the defendant caused the third party to terminate its relationship with the plaintiff, and the plaintiff would have received profits from the relationship with the third party well into the future if the defendant had not breached the contract.  
Id. 
at 295.  The court also said the defendant did not have a right to terminate either the contract with the plaintiff or the contract between the plaintiff and the third party upon any specified notice provision, and therefore full performance could not have been supplied by complying with the notice provision to terminate the contract.  
Id.
 

[¶38] This case is different from 
Florafax
.  United is not claiming it is entitled to damages for lost profits from a third-party contract that was cancelled because Continental breached its contract with United.  The contract states, “it being understood and agreed that either party hereto may cancel this Contract by giving the other party thirty (30) days written notice of such cancellation[.]”  United claims it was completely destroyed by Continental’s breach of contract, including the refusal to pay over $4.5 million for services and materials United provided and Continental’s failure to give 30 days’ notice of termination as the contract required.  United was not assured performance or profits from the contract beyond the 30-day notice requirement.  Continental could cancel the contract at any time after giving United 30 days’ notice.  United may not recover more than the amount it would have received upon full performance.  

[¶39] Under Oklahoma law, United is limited to recovering only those net profits which it could have earned during the 30-day notice period.  United could also recover the amount due for the services and materials it provided that it claims Continental failed to pay, if the jury finds in United’s favor on that breach of contract claim.  
See
 23 Okla. Stat. § 22.  We conclude the district court did not err in limiting the amount of damages United could seek on its breach of contract claim. 

IV

[¶40] We need not address other arguments raised because they are unnecessary to our decision.  We reverse the judgment and remand for a new trial.

[¶41] Lisa Fair McEvers

Dale V. Sandstrom, S.J.

Jon J. Jensen

Jerod E. Tufte

Daniel J. Crothers

[¶42] The Honorable Dale V. Sandstrom, S.J., sitting in place of VandeWalle, C.J., disqualified.

Jensen, Justice, concurring specially.

[¶43] The majority opinion is very well written, and I have joined in the majority opinion to reverse and remand this case for a new trial.  I write separately to note my concern regarding the merger of tort and contract claims within the jury instructions which is presumably the result of the district court’s application of Oklahoma law. Under North Dakota law, the jury would have been instructed to determine whether the parties had breached the contract and would not have been instructed on fraud, deceit, or tortious breach of contract.  Additionally, the district court’s application of Oklahoma law appears to have led to at least one inconsistency in the instructions given to the jury.

[¶44] Much of the confusion in this case is created by Oklahoma’s apparent use of the legal theories of fraud and deceit interchangeably and the merger of tort and contract law.  As noted by Justice Crothers in his dissent in 
Erickson v. Brown
, 2008 ND 57, ¶ 60, 747 N.W.2d 34, this “error of law has been developing over time and now appears to have adversely affected this case.”  This separate opinion is intended to serve the same purpose as Justice Crothers’ dissent in 
Erickson
 and to restate Justice Crothers’ observation of the following:

 [F]raud and deceit are very different legal theories with very different results in litigation. I therefore write separately to invite an appeal by a party who has not acquiesced in treating fraud and deceit as the same, so that this Court can have a vehicle for restoring some clarity and certainty to this area of the law.

Id
. at ¶ 61.

[¶45] Fraud is statutorily defined in N.D.C.C. ch. 9-03 and applies in the determination of whether or not the parties have provided the necessary consent for the formation of a contract.  
See
 N.D.C.C. §§ 9-03-04 (when consent is voidable); 9-

03-07 (fraud classified); 9-03-08 (actual fraud defined); 9-03-09 (constructive fraud defined); 9-03-10 (actual fraud is a question of fact).  In litigation, an allegation of fraud by one of the parties to a contract is a challenge to the formation of the contract through the assertion that there was insufficient consent to form the contract. N.D.C.C. § 9-03-04.  The party alleging fraud seeks to avoid the contract by showing that legally binding consent was absent because of a misrepresentation by the other party (fraud).  N.D.C.C. §§ 9-03-07, 9-03-08, 9-03-09.  The remedy for fraud is rescission of the contract and requires returning the parties back to their original positions.  
Heart River Partners v. Goetzfried
, 2005 ND 149, ¶ 21, 703 N.W.2d 330.  Rescission requires the parties to return any consideration (value) that was transferred between the parties.  N.D.C.C. § 9-09-04.  Fraud, if asserted, terminates the contract at its inception through the rescission.

[¶46] In this case, under the guise of applying Oklahoma law, the parties have asserted their breach of contract claims by asserting that the opposing party engaged in fraudulent acts.  While fraudulent conduct may result in a party not properly performing under the terms of a contract, a breach of the contract is not determined by instructing the jury to decide whether or not there is fraud as defined in N.D.C.C. ch. 9-03.   The existence of a breach of contract is determined by applying a jury instruction on breach of contract; a breach of contract is a failure to perform all or any part of what is warranted or required in a contract.  
See
 NDJI C-50.50 and C-

50.51.  An instruction to a jury to make a determination regarding the existence of fraud as provided in N.D.C.C. ch. 9-03 requires at least one of the parties to have been seeking to set aside the contract from its inception (rescission) and a return of the parties to their original positions.  However, the conduct alleged by the parties in this action has nothing to do with their consent to the contract and neither party challenged the sufficiency of their consent to the contract.  In summary, fraud as provided in N.D.C.C. ch. 9-03 would not apply to this case, and the jury would not have been instructed on claims of fraud by either party under North Dakota law.  Apparently the district court has determined that such instructions are allowed under Oklahoma law.

[¶47] Our courts must be careful to distinguish between allegations of fraud in the formation of a contract by a party seeking to set aside the contract pursuant to N.D.C.C. ch. 9-03 and allegations of fraudulent conduct that constitute a breach of contract. Allegations of fraud in the formation of a contract require jury instruction(s) pursuant to N.D.C.C. ch. 9-03, and allegations of fraudulent conduct leading to a breach of the contract only require the jury to be instructed to determine if there has been a breach of contract. In other words, does the party wish to set aside the contract because they entered into the contract under fraud or is the party alleging that a valid contract was created but subsequently breached by fraudulent conduct.

[¶48] In contrast to fraud, deceit is not an action dependent on a contract, it is a tort cause of action, and allows recovery of damages upon proof of an affirmative misrepresentation or suppression of material facts.  
See
 N.D.C.C. § 9-10-02; 
Delzer v. United Bank of Bismarck
, 527 N.W.2d 650, 653 (N.D. 1995).  Deceit appears in N.D.C.C. ch. 9-10, Obligations Imposed by Law, along with intentional acts and negligence.  If the parties have a contractual relationship, it is possible, in limited circumstances, to assert both a breach of contract claim and a deceit claim.
  Delzer
,  at 654; 
Pioneer Fuels, Inc. v. Montana-Dakota Utilities, Co.
, 474 N.W.2d 706, 709 (N.D. 1991).

[¶49] In 
Pioneer Fuels
, Pioneer Fuels, Inc. sued Montana-Dakota Utilities for breach of contract and deceit.  474 N.W.2d at 707-08.  Pioneer Fuels included in its claim for damages an award of punitive damages.  
Id.
 at 708.  Following a jury trial, Pioneer Fuels was awarded damages for breach of contract and deceit.  
Id
.  The award included punitive damages.  
Id
.  Montana-Dakota Utilities appealed asserting that an award of punitive damages was inappropriate in a breach of contract case.  
Id.
 at 709.  This Court’s opinion considered whether evidence supporting a breach of contract was sufficient to support a finding of deceit and the award of punitive damages.  
Id.
 at 710.  This Court stated:

Tortious conduct must exist independently of the breach of contract and there must be proof of actual damages resulting from the independent tort.

“The independent tort must be separate and distinct from the breach of the contract.  While the intentional tort may occur at the time of and in connection with the breach, or may arise out of the same transaction, it is not committed merely by breaching the contract, even if such act is intentional. . . .”

Id.
 (quoting 22 Am. Jur. 2d 
Damages
 § 752 (1988)) (citations omitted).  “A breach of contract even if intentional, malicious, or in bad faith, is not enough to convert a contract action into a tort action.”  
Id
. (citation omitted).

[¶50] As stated by Justice Crothers in his dissent in 
Erickson
, “[t]he holding and rationale in 
Pioneer Fuels
 make clear that the same evidence will not support a finding of breach of contract and of deceit.  Rather, the plaintiff must come forward with clear and convincing evidence of tortious conduct, independent of the breach.”  
Erickson
, 2008 ND 57, ¶ 91, 747 N.W.2d 34.

[¶51] This Court also addressed the existence of tort claims between parties to a contract in 
Delzer, 
527 N.W.2d at 653-54:

Delzers argue that the tort of deceit may exist independently of the contract claim and that, under the trial court’s instructions on contract and deceit, the verdict is not inconsistent.  United responds that the jury’s verdict is inconsistent and that the trial court properly granted judgment as a matter of law on the deceit claim, because there was no evidence of deceit independent of the contract claim and there were no damages under Delzers’ over-collateralization theory of deceit.

. . . .

Pioneer Fuels
 stands for the principle that, where there is a breach of contract, there must be some additional, independent facts not connected to the manner of the breach of contract to support tort and exemplary damage claims.  
See
 22 Am.Jur.2d, 
Damages
 § 752 (1988) (exemplary damages ordinarily not recoverable in action for breach of contract, unless breach amounts to an independent, willful tort). However, when the parties’ actions do not meet the requirements for a contract, 
Pioneer Fuels
 does not preclude tort recovery for deceit, if the elements of deceit under Chapter 9-10, N.D.C.C., are established.  
See
 
Dewey v. Lutz
, [462 N.W.2d 435 (N.D. 1990)] (even if some defendants were not parties to contract, there was sufficient evidence to support jury’s alternative findings of deceit by those defendants); 
State Bank of Kenmare v. Lindberg
, 471 N.W.2d 470 (N.D. 1991) (allegations of extra-contractual statements by lender which induced borrower to alter position sounds in tort).

Justice Crothers, again in his dissent in 
Erickson
, summarized the 
Delzer
 decision as follows:

While the Court in 
Delzer
 failed to distinguish between fraud as a contract action and deceit as a tort, in the context of the deceit claim appealed in that case, the Court did follow the holding in 
Pioneer Fuels
 to confirm that proof of tortious conduct must exist independent of a breach of contract.  From this, it follows that affirmation of consent following fraud, and pursuit of a deceit claim, require proof separate and apart from the breach of contract.  It further follows that recognition of a deceit claim arising out of a contractual relationship is not explicit or implicit recognition of a claim for tortious breach of contract.

Erickson
, 2008 ND 57, ¶ 92, 747 N.W.2d 34.

[¶52] In this case, under North Dakota law, instructing the jury on the deceit claims would not have been appropriate because the alleged tortious conduct did not exist independent of the alleged breach of contract.  The jury instructions describing Continental’s and United’s breach of contract claims outline the very same facts that form the basis of their deceit claims.

[¶53] In the instruction describing Continental’s breach of contract claim, the district court described the alleged breaches as follows:

The Defendants breached the contract by presenting inaccurate or false charges to Continental and/or by billing for services in violation of the parties’ contract and allowing liens to be filed on wells operated by Continental[.]

That instruction correctly describes potential facts supporting a breach of contract claim and confirms no tortious conduct was alleged by Continental independent of the alleged breach of contract.  As such, under North Dakota law, Continental would not have been permitted to submit a claim for deceit to the jury.

[¶54] Similarly, in the instruction describing United’s breach of contract claim, the court described the alleged breaches as follows:

Continental breached the contract by failing to pay for materials and services that United provided to Continental; failing to give proper notice of the termination of the contract; or not exercising good faith and fair dealing[.]

That instruction correctly describes potential facts supporting a breach of contract claim and confirms that no tortious conduct was alleged by United independent of the alleged breach of contract.  Under North Dakota law, United would not have been permitted to submit a claim for deceit to the jury.

[¶55] As explained above, North Dakota has not recognized the claim of “tortious breach of contract.”  To the contrary, any tort claim in this case would be required to exist independent of the breach of contract claim under North Dakota law.  As such, the jury would not have been instructed on “tortious breach of contract” under North Dakota law.

[¶56] To summarize the claims in this case under North Dakota law, the jury was properly instructed on Continental’s breach of contract claim.  Under North Dakota law, the jury would not have been given instructions on Continental’s claims for tortious breach of contract, fraud, or deceit.  Under North Dakota law, the jury would not have been instructed on Continental’s claim for breach of fiduciary duty.  The jury was provided proper instructions on United’s claims for breach of contract and promissory estoppel if North Dakota law were to apply.  The jury would not have been given instructions on United’s claims for tortious breach of contract, constructive fraud, or deceit under North Dakota law.

[¶57] Under North Dakota law, all of the allowable claims would be limited to damages allowable in contract claims.  Punitive damages are not recoverable and instructing the jury on punitive damages would have been improper under North Dakota law.

[¶58] The jury verdict form also asked the jury to determine whether any breach of contract by Continental or United was intentional, malicious, willful and wanton.  As noted in the preceding paragraph, punitive damages are excluded from contract damages in North Dakota.  The instruction also implies the intentional breach of a contract gives rise to an action greater than other breaches of contract.  That implication is not correct under North Dakota law.  
Pioneer Fuels
, 474 N.W.2d at 710. Parties may intentionally breach a contract.  
Id
.  For example, a party may determine breaking the contract and paying appropriate damages makes greater economic sense than continuing with the contract.  The breach would be intentional but would not be treated any differently than any other breach, and the damages for the intentional breach would be measured in the same manner as any other breach.

[¶59] Finally, the parties requested jury instructions that included an instruction for deceit, an instruction for fraud, and a third jury instruction containing a joint definition of fraud and deceit.  The third instruction was intended to define an excuse for performance under the terms of the contract; if one of the parties engages in fraud or deceit, the subsequent performance by the other party is excused.  However, the third combined instruction uses a single definition for both fraud and deceit and mirrors the instruction defining fraud.  As such, the jury was left with two definitions for deceit:  one in the instruction entitled Deceit and a second, different definition, in the instruction entitled Fraud and Deceit.  The district court should review this inconsistency on remand.

[¶60] I join in the majority opinion.  The parties have not requested, on this appeal, that we review whether or not the district court’s jury instructions appropriately apply Oklahoma law.  Because the jury instructions appear to have completely merged contract claims and tort claims in the application of Oklahoma law, I write separately to urge the district court to confirm that Oklahoma law was properly reflected within the jury instructions.

[¶61] Jon J. Jensen

Daniel J. Crothers